UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

SIDNEY MANES, Administrator of the Estate of
HECTOR RIVAS,

                         *Plaintiff,*

vs.

                                                         Civil Action No. 5:19-cv-844
                                                         (BKS/TWD)

ONONDAGA COUNTY, CITY OF SYRACUSE,
WILLIAM FITZPATRICK, DR. ERIK MITCHELL,
AND "JOHN DOES 1-10",

                         *Defendants.*

---

**STATEMENT OF UNDISPUTED FACTS ON BEHALF OF WILLIAM FITZPATRICK IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

1. Sidney Manes represented the Decedent Rivas before and after the 440 Motion. (Ex. D-1, EBT I, p. 16).

2. Manes did not ask Richard Calle for his file. (Ex. D-1, EBT I, p. 19).

3. Manes did not ever see Calle's file. (Ex. D-1, EBT I, p. 19).

4. Manes did not ever have discussions with any lawyers who said they had his file. (Ex. D-1, EBT I, p. 19)

5. Richard Priest had said he had seen the file. (Ex. D-1, EBT I, p. 19-20)

6. Manes never talked with anyone either in his capacity as attorney for Rivas or as administrator of the estate as to the whereabouts of the file. (Ex. D-1, EBT I, p. 20)

7. Manes never asked Rivas or any of his lawyers where Mr. Calle's file was. (Ex. D-1, EBT I, p. 20)

8. Manes described his role in representing Rivas at page 21, appears to be trying to take on Rivas' case and follow through with the habeas corpus. (Ex. D-1, EBT I, p. 21).

9. Manes did not ask Attorney Kimberly Zimmer about the status of Calle's file. (Ex. D-1, EBT I, p. 21).

10. Manes acknowledged that he did not ask anyone where Calle's file was. (Ex. D-1, EBT I, p. 21-22).

11. Manes did not ever see Calle's file stating, "I did not see Mr. Calle's file at any time that I can recall in all of the years that I have been involved with Mr. Rivas." (Ex. D-1, EBT I, p. 22).

12. No lawyer to his knowledge had told Manes that he had seen Mr. Calle's file. (Ex. D-1, EBT I, p. 22).

13. In fact, Calle testified before Judge Brunetti that neither Manes nor any other counsel for Rivas asked him for his file as part of that proceeding. (Ex. D-1, EBT I, p. 22).

14. Manes understands that file is defined as all the records, notes and documents that Calle had with regard to his preparation for the trial and the trial of Rivas. (Ex. D-1, EBT I, p. 22).

15. Sidney Manes met with Rivas twenty times. He does not remember that he ever took any notes in meeting with Rivas. (Ex. D-1, EBT I, p. 23).

16. Manes did discuss the facts in the case but he can only talk from his recollection. (Ex. D-1, EBT I, p. 23).

17. When Manes met with Mr. Rivas at least twenty times, he did not write anything down in terms of any of their discussions. He did speak with Rivas about the facts in the case. (Ex. D-1, EBT I, p. 23).

18. Manes recalls discussing where Rivas was on Friday, March 27 at 11:00 p.m. and 2:30 that morning but he didn't make any notes. He just recalls he felt he had an alibi for that time. (Ex. D-1, EBT I, p. 24).

19. Manes did not discuss with Rivas whether he was at Hill's apartment at 11:00 in the evening on that day. (Ex. D-1, EBT I, p. 24-25) .

20. Manes read the trial testimony and was aware that there were witnesses who said that Rivas was seen in front of her apartment at that time. (Ex. D-1, EBT I, pgs. 24-26).

21. Manes never asked Rivas if he was in front of her apartment at or around 11:00 p.m. on March 27, 1987. (Ex. D-1, EBT I, p. 26) .

22. Manes never asked Rivas if he had a key to the apartment although Manes did remember that a key was recovered by the police in Rivas' custody. (Ex. D-1, EBT I, pg. 26).

23. Manes did not ask Rivas about his relationship with Ms. Hill. (Ex. D-1, EBT I, p. 26).

24. Manes did not ask Rivas if he told his friends Valerie Hill was not well enough to come to a party on March 29. (Ex. D-1, EBT I, p. 27).

25. Manes did not ask Rivas if he ever said in the company of another person "Valerie, Valerie, I didn't mean to do it." (Ex. D-1, EBT I, p. 27).

26. Manes never asked Rivas if he erected a shrine to Valerie in his house. (Ex. D-1, EBT I, p. 27-28).

27. Manes never spoke with William Fitzpatrick about this case. (Ex. D-1, EBT I, p. 29).

28. Manes never spoke with Erik Mitchell about this case. (Ex. D-1, EBT I, p. 29).

29. Manes never spoke with Dr. David Rigle about this case that he can remember. (Ex. D-1, EBT I, p. 30).

30. Manes never spoke with Dr. William Sawyer about this case. (Ex. D-1, EBT I, p. 30).

31. Manes never spoke with Mr. Richard Calle about this case. (Ex. D-1, EBT I, pg. 30).

32. Manes never spoke with any of the witnesses that testified at the trial. (Ex. D-1, EBT I p. 30-31)

33. Manes spoke with Rob Moran, the Assistant District Attorney handing the re-trial, to say good morning to him. (Ex. D-1, EBT I, p. 31).

34. Manes testified in the habeas corpus proceeding. (Ex. D-1, EBT I, p. 31).

35. Manes collected $25,000 in a medical malpractice case for Rivas. (Ex. D-1, EBT I, p. 32).

36. Manes does not remember bringing an actual innocence claim against the State for Rivas. (Ex. D-1, EBT I, p. 32-33). He testified that his information and belief is what he remembers and what he surmises. (Ex. D-1, EBT I, p. 34-35).

37. Paragraph 63 of the Complaint states:

> "Rivas' alibi was uncorroborated and incomplete for a three and a half hour window between approximately 9 p.m. on Friday, March 27th 1987 and 12:30 a.m. on Saturday, March 28th, 1987." (Ex. D-1, EBT I, p. 36).

He stated he did not know how that information was obtained. (Ex. D-1, EBTI, pg. 37).

38. Manes didn't ask Mr. Rivas about two witnesses who saw Rivas in front of Hill's house at 11:00 p.m. on 3/27. Mr. Manes stated "I believed him. I believed he was innocent." (Ex. D-1, EBT I, p. 40).

39. Manes alleged, "The prosecution had no reasonable or probable cause to believe that Rivas had anything to do with the murder and sexual assault of Hill – and therefore, no case against him for those crimes – unless it could prove that Hill died Friday night, March 27th, 1987." (Ex. D-1, EBT I, pg. 38).

40. Manes admitted he did not ask Rivas about the witnesses who testified at trial that they saw Rivas in front of Valerie Hill's house at 11:00 that night. (Ex. D-1, EBT I p. 40)

41. Manes was then asked about paragraph 65 of the Complaint in which he alleged "Shortly after becoming district attorney, Fitzpatrick approached Mitchell, the medical examiner, and requested that he revise Hill's autopsy report to expand the time of death to include Friday, March 27th, 1987 when Rivas' alibi was not as strong." (Ex. D-1, EBT I, p. 40).

42. With regard to the basis for the allegation in Paragraph 65, Manes was not present for any discussion between Mitchell and Fitzpatrick and did not know of anyone else who was present for discussions in which Fitzpatrick asked Mitchell to revise the autopsy report. (Ex. D-1, EBT I, p. 43).

43. There is no factual basis for the allegation in paragraph 67 of the Complaint that "Fitzpatrick promised Mitchell that if Mitchell revised and expanded Hill's time of death to include Friday, March 27, 1987, that Fitzpatrick would make the investigations into Mitchell's conduct go away." (Ex. D-1, EBT I, p. 47).

44. The representation by Police Officer Timothy Phinney requesting a search warrant of Rivas' apartment states "That the Onondaga County Medical Examiner's Office, Dr. Mitchell's

preliminary estimate on the time of death of the victim was sometime Saturday the 28th of March afternoon and Sunday morning the 29th of March 1987" is not a statement authored by Dr. Mitchell.

45. Mitchell did not sign any document or affidavit indicating the time of death other than his writing in the Medical Examiner's Record dated 3/30/87 in which he states appears as though decedent was there approximately 2-3 days. (Ex. A, pg. 17).

46. Manes was not present and did not overhear any conversation between Fitzpatrick and Mitchell which pertained to the allegation in paragraph 68 of the Complaint. (Ex. D-1, EBT I, p. 69).

47. Manes acknowledged he did not know if the deal he is alleging between Sidney Cominsky, Dr. Mitchell and District Attorney Fitzpatrick was made before Mitchell testified to the Grand Jury in November of 1992. (Ex. D-1, EBT I, p. 70).

48. Mitchell made no mention of autopsy related slides in his testimony before the Grand Jury. (Ex. D-2, EBT II, p. 10).

49. Manes acknowledged Mitchell never put into a signed statement that he was aware of in which he modified the time of death. (Ex. D-2, EBT II, p. 12-13).

50. Manes acknowledges that he did not hear "I didn't hear him say you can go free if you change your testimony. I didn't hear any of that. But I know he had a lawyer with him and they had a conversation in court." (Ex. D-2, EBT II, p. 14).

51. Manes claims in his deposition that there were misdemeanors outstanding against Dr. Mitchell for his operation as the Medical Examiner. (Ex. D-2, EBT II, p. 16).

52. Manes alleged there were 100 misdemeanors. (EBT II p. 16-17) There were no misdemeanors ever pending against Mitchell. (Ex. I, pg. 27).

6

53. Manes claimed Mitchell had a couple felonies pending against him. (Ex. D-2, EBT II, p. 16-17). There were no felonies ever pending against Mitchell. (Ex. I, pg. 27).

54. Manes acknowledged that the language in paragraph 76 of the Complaint that a deal had been brokered with Fitzpatrick in exchange for expanding Hill's time of death to include Friday, March 27, 1987 was based on an assumption. (Ex. D-2, EBT II, p. 19).

55. Manes testified he could only assume that a deal was brokered before Mitchell testified before the Grand Jury. (Ex. D-2, EBT II, p. 22).

56. Manes testified with regard to the claims in the Complaint up through paragraph 83 "I am assuming there had to be some sort of meeting between Doctor Mitchell and Fitzpatrick to have worked out some sort of arrangement. It certainly seems to me to be the case." (Ex. D-2, EBT II, p. 32).

57. The transcript of the appearance before the Second Circuit (Exhibit O) at page 185419, Manes acknowledged that the DA wasn't investigating until the trial was over. "If you will forgive me, Your Honor, she indicates the DA wasn't investigating, that may be true." (Ex. D-2, EBT II, p. 46)

58. In his deposition, Manes conceded in that sentence the District Attorney was not investigating until after the Rivas trial stating, "It wasn't his job." (EBT II p. 46)

59. Manes testified he doesn't know if the DA would be aware of any DEC investigation before the proffered any charges. (Ex. D-2, EBT II, p. 51-53).

60. Attorney Klein, Mr. Rivas' defense counsel for the retrial, asked for adjournments of the December 2015 and March 22016 trial dates. Mr. Rivas was present as counsel, and did not object. (Ex. S-3, pgs. 4-7).

61. Contrary to the claim in the Complaint with regard to paragraphs 101-103 of the Complaint, Manes acknowledged that no one had told him that Fitzpatrick admitted he deliberately withheld information regarding Patsy Barricella and Joe Morgan. (Ex. D-3, EBT III, p. 10).

62. Manes testified that he does not claim in paragraphs 104-111 of the Complaint that Fitzpatrick did any wrong or inappropriate except the introduction of a library book. (Ex. D-3, EBT III, pg. 10-11).

63. Manes acknowledged that Rivas was given the opportunity to adjourn the trial as it pertains to Barricella by the trial Judge and chose not to. (Ex. D-3, EBT III, p. 12).

64. Manes testified that "the brain slides were never examined by Mr. Calle, and Mr. Calle was not prepared for this trial. He did a very ineffective defense for Mr. Rivas." (Ex. D-3, EBT III, p. 34).

65. Mr. Klein was critical of the representation of Mr. Rivas provided by Mr. Calle at trial. (Ex. S-4, pg. 6).

66. Manes was critical of the representation provided by Mr. Calle at trial. (Ex. D-3, EBT III, pg. 31).

Dated: October 30, 2024

Robert F. Julian, Esq.
Bar Roll # 601157
ROBERT F. JULIAN, P.C.
Attorneys for Defendants
2037 Genesee St.
Utica, NY 13501
315-797-5610