# EXHIBIT "M"

Deputy District Attorney
William F. Dowling



Chief Assistant District Attorne

John B. LaParo
Gary T. Kelder
Jordan J. Fiske
Michael A. Price
Glenn T. Suddaby

## DISTRICT ATTORNEY
## WILLIAM J. FITZPATRICK

County of Onondaga
Onondaga County Civic Center
421 Montgomery Street
Syracuse, New York 13202
315-435-2470

FOR RELEASE:   NOVEMBER 19, 1993

FROM:   WILLIAM J. FITZPATRICK
ONONDAGA COUNTY DISTRICT ATTORNEY

Since mid-July of this year, this Office has conducted an investigation into the practice of Onondaga County Medical Examiner Erik Mitchell. This probe had as its genesis published reports about a convicted child pornographer being photographed at the Medical Examiner's Office (MEO) during an autopsy. This Office has worked in conjunction with the N.Y.S. Department of Health and has had the invaluable assistance of Investigator Dennis Griffin. This phase of the probe is complete and certain findings have been made clear. I want to emphasize before discussing these findings several things:

1.   This probe was conducted as fairly and as professionally as I know how.   Dr. Erik Mitchell was completely cooperative and answered all questions put to him by me in the presence of his attorney;

2.   This probe makes no findings of guilt or innocence. While it may appear that certain acts could be construed as criminal, no charges have been filed and any person mentioned must be cloaked with the presumption of innocence; and

3.   The investigators involved in this attempted wherever possible to rely on objective sources so the conclusions could not be characterized as biased or the product of disgruntled employees.

With that in mind, let me address what we have found:

I.   WOODARD PHOTO
Dennis Woodard was photographed on January 5th, 1992, most probably by former morgue employee Joseph Contrera. At least one other unauthorized person was present, namely fifteen (15) year-old Jason Williams, Contrera's stepson. Dr. David Rigle "supervised" this autopsy and authored the autopsy protocol. Woodard held certain organs from the deceased and actually helped stitch his remains.

County's Disclosure: Investigation of Dr. Erik Mitchell 0004

-2-

II.  HOUSTON PHOTO
     On March 25, 1987, Polaroid photos were taken of morgue
assistant Alexis Houston by former assistant Medical Examiner Dr.
Jean showing Ms. Houston in playful poses over the body of a female
suicide victim.    The photos were done in jest, and while
inappropriate, involved no illegal conduct.

III.  DEC INVESTIGATION
     The DEC through its agents has investigated allegations that
certain toxic materials were illegally stored and certain body
parts were illegally disposed of by MEO personnel.   Affidavits have
indicated that body parts have been flushed for several years, the
most recent time being in the Summer of 1992 when 600 gross jars of
outdated tissue were flushed down the sink in an autopsy room.
While these incidents clearly could be considered violations of the
Environmental Conservation Law, the necessary standard of proof
beyond a reasonable doubt is not currently present.   Further
investigation of this area is necessary if a prosecution is to be
pursued.

IV.  TISSUE HARVESTING
     The investigation has revealed that Dr. Mitchell has an
interest in preserving skeletal remains at the MEO for the purpose
of scientific research.   He also has taken an aggressive approach
to the harvesting of body tissue, again for the purpose of
research.

     A.   Specifically, in June of 1985, by letter to Dr. Mitchell,
Bristol Labs requested the harvesting and donations of human
kidneys and livers, especially those of young adults or
adolescents.   This practice went on for three (3) years.   It is
impossible to determine the names of the donors, whether permission
was ever given and the actual number of organs donated as neither
the MEO nor Bristol Labs kept records of this practice.
     B.   From 1986 through October 1989, one Larry Miller, a PhD
working under the direction of Dr. Ahmad Elbadawi of the Dept. of
Pathology at Upstate, was conducting a human bladder analysis, the
specimens being supplied by the Onondaga County MEO.   The specimens
harvested, which numbered approximately 150, were generally
bladders and connective tissue which included the reproductive
organs.   Investigation revealed that in roughly 95% of the cases
there was no family consent to donate.   In fact, three (3) cases
were uncovered where consent had been specifically withheld yet
tissues had been removed.   All three (3) autopsies were performed
by Dr. Mitchell.   To date, there has been absolutely nothing
published in connection with this "research".

-3-

c.  In 1988 and again in 1989, the Onondaga County MEO sponsored a "skeletal recovery" course for law enforcement personnel.  The cost per attendee was $500, that price being adjustable for local officers.  Numerous area law enforcement people attended the course and Dr. Mitchell claims not to have participated in the field exercises.  No one associated, currently or formerly, with the MEO has been able to supply the identities of the human remains utilized on Contrera's farm.  Evidence indicated that six (6) full skeletons were used for this course, some of them with significant amounts of tissue still attached.  Dr. Mitchell professes no knowledge of the identities of these remains.

There is one former MEO employee who recalls loading three (3) frozen bodies in blue body bags into a vehicle directly from the morgue, and there is some photographic evidence to confirm this. Again, their identity is unknown.  It is known that the MEO was in possession of three (3) exhumed bodies, all "John Does", one from Ulster County and two from Onondaga County.  While the stated purpose of the exhumations was for facial reconstruction in an effort to determine identity, it is clear that the additional motivation was to provide remains for the seminar.  Contrary to specific court order, the remains have not been reinterred and claims that the remains are being maintained for future study are absurd.

The investigation has further revealed that at least four (4) individuals have all or portions of their skeletal remains being stored at the MEO contrary to the wishes of next of kin.  In October 1989, the Onondaga County Executive issued an edict to the Medical Examiner which ordered that specimens not be taken from any body without permission of the family.

On Thursday, November 18th, I met with County Executive Pirro and informed him of the results of this preliminary probe.  While I in no way presume to offer advice to the County Executive, I pointed out to him my concern that trial juries in this County could very well begin to focus on the issues surrounding Erik Mitchell and be distracted from their task of deciding guilt or innocence.  This is unacceptable and for that reason and others, I suggested he ask for Dr. Mitchell's resignation sometime in the near future to allow him time to complete his pending investigations and cases.

If said resignation is forthcoming, I have informed Dr. Mitchell's attorney that in the interests of justice my Office's probe is at an end.

-4-

If I may be permitted a personal note.  This is a very sad day for me personally and professionally.  I take no joy in criticizing a man I have worked with for ten (10) years.  I have walked through swamps, dug through tons of earth, looked through garbage and missed many a night with my family standing side by side with Erik Mitchell.  Not so either of us would get rich, but only so killers could be brought to justice.

I have never known the man to be motivated by any thought save that of the safety and health of the people of Onondaga County.  But he went too far.  An autopsy patient is not the personal property of the doctor performing same.  My feelings for Dr. Mitchell aside, my responsibility is to the People of this County who must be assured that their loved ones are being treated with dignity and respect.  And I cannot tolerate the possibility of a guilty person going free because a jury has been distracted from the evidence.

END