# Exhibit "O"

```
                                                                    1
     G46VRIVA

1    UNITED STATES COURT OF APPEALS
     FOR THE SECOND CIRCUIT
2    ------------------------------------x

3    HECTOR RIVAS,

4                     Petitioner-Appellant,

5               v.                              13-2974-pr

6    BRIAN FISCHER, Superintendent,
     Sing Sing Correctional Facility,
7
                      Respondent-Appellee,      SHOW-CAUSE HEARING
8
     ------------------------------------x
9

10
                                                New York, N.Y.
11                                              April 6, 2016
                                                3:05 p.m.
12

13
     Before:
14
                    HON. JOSÉ A. CABRANES, Presiding,
15                    HON. ROSEMARY S. POOLER,
                      HON. ROBERT D. SACK,
16
                                          Circuit Judges
17

18                              APPEARANCES

19   LANGONE & ASSOCIATES
          Attorneys for Petitioner-Appellant
20   BY:  RICHARD M. LANGONE

21   NEW YORK STATE ATTORNEY GENERAL
          Attorneys for Respondent-Appellee
22   BY:  PRISCILLA I. STEWARD, AAG

23   ALSO PRESENT:   SIDNEY L. MANES, ESQ.
                     EDWARD W. KLEIN, ESQ.
24                   CASEY JOHNSON, ESQ.
                     KIMBERLY M. ZIMMER, ESQ.
25                   ROBERT E. MORAN, ADA, Onondaga County
```


EXHIBIT Y

SOUTHERN DISTRICT REPORTERS, P.C.

185371                                              185371- 185488

```
                                                                  24
         G46VRIVA
```

1    convicted, Mitchell was let off the hook.  He was allowed to
2    plead out and avoid the --
3             JUDGE POOLER:  He left his job.
4             MR. LANGONE:  And he left his job.
5             JUDGE POOLER:  So was it going on contemporaneously?
6             MR. LANGONE:  Contemporaneously.
7             There was an investigation with the DEC.
8             JUDGE POOLER:  This is a factual issue.
9             MS. STEWARD:  He was not being investigated by the
10   DA's office.  That investigation with the DA's office did not
11   begin until four months after the trial was over.
12            JUDGE CABRANES:  Let's just state the obvious:  In our
13   opinion we set forth with as much care as possible what we
14   thought to be the facts.  And I'm not aware -- maybe my
15   colleagues are aware, I'm not aware of any effort by anyone in
16   the state to correct any misapprehension by us.  I recall no
17   such -- it may be that Ms. Steward had a different view of the
18   facts, but whatever that view may be was never conveyed to us
19   in the aftermath of the decision.
20            JUDGE POOLER:  And before the DA started
21   investigating -- I know this because I live in Onondaga
22   County -- there were stories in the newspaper about his
23   integrity as a coroner.  And that was going on for a while
24   before the DA began his investigation.  He was under attack by
25   his former employees in the office.

                    SOUTHERN DISTRICT REPORTERS, P.C.

185417

G46VRIVA
25

```
 1              MS. STEWARD:  That's right.  That was, I believe, in
 2    1992/1993.  But they were not related to his -- the way he did
 3    his job, and they weren't related to the way he did his job in
 4    this case.
 5              JUDGE POOLER:  Allegedly.
 6              MR. MORAN:  If I may, Judge.
 7              MR. MANES:  If you'll forgive me, your Honor, she
 8    indicates that the DA wasn't investigating, that may be true.
 9    The Department of Environmental Conservation has investigated
10    Dr. Mitchell for 144 misdemeanors:  For disposing of body
11    parts, for pouring material blood down the sink.  So the people
12    who would have prosecuted Dr. Mitchell was not the DEC, it
13    would have been the district attorney.
14              JUDGE POOLER:  He knew about the DEC to the best of
15    our knowledge?
16              MS. STEWARD:  We have no evidence of that.
17              JUDGE POOLER:  There's no evidence that he knew the
18    DEC was investigating?
19              MR. LANGONE:  He said to the press, He was my friend
20    for 20 years and he's resigning and he's leaving.  That's
21    exactly why he wasn't prosecuted, because he agreed to resign.
22              MS. STEWARD:  That's not evidence that he knew about
23    the DEC investigation.
24              JUDGE CABRANES:  Hold on.
25              We understand that there are differences of
```

SOUTHERN DISTRICT REPORTERS, P.C.

185419

```
                                                                   26
    G46VRIVA

1   perspective here, but given this colloquy, Mr. Moran, do you
2   have anything to add?
3            MR. MORAN:  I'm not calling Dr. Mitchell; I'm calling
4   Dr. Stoppacher.  Stoppacher reviewed the --
5            JUDGE POOLER:  But it's based on Dr. Mitchell's notes.
6            MR. MORAN:  Yes.  It's not that unusual.
7            JUDGE CABRANES:  His testimony will consist of an
8   evaluation of the notes 20-plus years ago?
9            MR. MORAN:  Yes.  And the temperature that was at the
10  house, and the condition that the body was in, and then he'll
11  estimate the time of death.
12           JUDGE POOLER:  Will we also consider Dr. Wecht's
13  testimony?
14           MR. MORAN:  I haven't.  I plan on calling
15  Dr. Stoppacher.  Dr. Stoppacher has looked at --
16           JUDGE POOLER:  I understand.  But Dr. Wecht testified
17  at a hearing later and he contradicted Dr. Mitchell.  I'm
18  wondering if the medical examiner would be able to respond to
19  that testimony as well.
20           MR. MORAN:  I'm sure that he will.  I look forward to
21  crossing Dr. Wecht.
22           JUDGE CABRANES:  Mr. Langone, you had something to say
23  on this?
24           MR. LANGONE:  It just slipped my mind, Judge.  It will
25  come back to me.

                    SOUTHERN DISTRICT REPORTERS, P.C.


185421
```