# EXHIBIT "S-2"

1

```
 1   COUNTY COURT OF THE STATE OF NEW YORK

 2   COUNTY OF ONONDAGA    :   CRIMINAL TERM

 3   ---------------------------------------

 4   THE PEOPLE OF THE STATE OF NEW YORK,

 5                                    Indictment No.
          vs.                          92-1114-1
 6
                                       Motion/Bail
 7
     HECTOR RIVAS,
 8
                  Defendant.     NYSID 1375082H
 9
     ---------------------------------------
10
                            Criminal Courts Building
11                          Syracuse, New York 13202

12                          April 20, 2015

13   B e f o r e:

14            HONORABLE THOMAS J. MILLER,
                       Judge
15
     A p p e a r a n c e s:
16
     WILLIAM J. FITZPATRICK ESQ.
17     District Attorney, Onondaga County
       BY:  ROBERT MORAN, ESQ.
18     Assistant District Attorney and
       JAMES MAXWELL, ESQ.
19     Assistant District Attorney

20   LANGONE AND ASSOCIATES
       Attorneys for the Defendant
21     600 Old Country Road
       Garden City, New York   11530
22     BY: RICHARD M. LANGONE, ESQ

23   BOUSQUET HOLSTEIN, PLLC
       Attorneys for the Defendant
24     110 West Fayette Street
       Syracuse, New York   13202
25     BY: SIDNEY L. MANES, ESQ.
```

Ann A. Makowiec, Supreme Court Reporter

Case 5:19-cv-00844-BKS-TWD    Document 142-32    Filed 10/31/24    Page 3 of 19
Case 18-2974, Document 108, 09/03/2019, 2616007-80, Page34 of 119

2

```
 1  APPEARANCES CONTINUED:

 2  EDWARD W. KLEIN, ESQ,
        Attorney for the Defendant
 3      217 Montgomery Street
        Syracuse, New York   13202
 4
    Defendant Present in Person
 5
    Reported by:
 6
    Ann A. Makowiec
 7  Supreme Court Reporter

 8                       *      *      *      *
```

Case 5:19-cv-00844-BKS-TWD   Document 142-32   Filed 10/31/24   Page 4 of 19
Case 15-2974, Document 173, 05/05/2015, 1500180, Page38 of 119

People vs. Rivas - 92-1114-1                                    3

1     THE CLERK: Hector Rivas.

2     THE COURT: Could the attorneys please

3  approach?

4     (Whereupon, Counsel approached the Bench

5  and an off-the-record discussion ensued.)

6     THE COURT: Mr. Langone, Mr. Manes, you

7  each represent Hector Rivas?

8     MR. LANGONE: Yes, your Honor.

9     MR. MANES: Yes, your Honor.

10    THE COURT: This is Hector Rivas present

11 with you gentlemen?

12    THE DEFENDANT: Yes, your Honor.

13    THE COURT: Good morning, sir.

14    THE DEFENDANT: Good morning.

15    THE COURT: Rob Moran, as well as Jim

16 Maxwell appear on behalf of the District

17 Attorney's Office.

18    Just some housekeeping things. First of

19 all, Mr. Rivas has moved to vacate his conviction

20 in accordance with Criminal Procedure Law Section

21 440.10(1)(h). The motion is predicated on the

22 March 11th, 2015, decision of the Second Circuit

23 Court of Appeals which found that the defendant

24 received constitutionally ineffective assistance

25 of counsel at his trial in 1993.

People vs. Rivas - 92-1114-1                                          4

1       Accordingly, the Second Circuit remanded
2  this matter back to District Court with a mandate
3  to issue a Writ of Habeas Corpus unless the state
4  takes concrete and substantial steps, in their
5  words, to expeditiously retry Mr. Rivas.
6       By a letter dated April 16th, 2015, Mr.
7  Moran indicated that there was no opposition to
8  the Criminal Procedure 440.10 motion.
9       Accordingly, the motion to vacate the
10 defendant's conviction is hereby granted in
11 accordance with CPL Section 440.10(1)(h) based
12 upon a finding that the defendant was deprived of
13 the effective assistance of counsel at his prior
14 trial.
15      At our last Court date on March 25, 2015,
16 I asked Mr. Langone to inform the Court by today's
17 date as to whether he would be representing Mr.
18 Rivas for purposes of a retrial, whether Mr. Rivas
19 would be hiring another attorney or whether it
20 would be necessary for me to assign an attorney
21 per the Second Circuit Court decision. I would
22 like to give a trial date. So I would like to
23 move this case along.
24      Mr. Langone, did you want to be heard with
25 regard to the issue of counsel, sir?

People vs. Rivas - 92-1114-1                                              5

1          MR. LANGONE: Yes, your Honor. We would
2   make an application to grant informal poor person
3   status to Mr. Rivas in light of the circumstances
4   of twenty-two years of incarceration. I would
5   request the appointment of counsel. Mr. Rivas
6   does have counsel of choice that he'd like to
7   retain and -- but it's a logistical matter. The
8   family doesn't have the funds at this point, but
9   at some point there may be another counsel coming
10  into the case. But for the moment, certainly, we
11  would request appointment of local counsel, and I
12  would request, with permission of the Court, to
13  stay on board at least for purposes of the motion
14  practice in this case because I've got such
15  history and familiarity with the facts and
16  circumstances.
17         THE COURT: I know that's true both of you
18  as well as Mr. Manes. It just so happens that
19  while you were speaking, Mr. Langone, Ed Klein
20  walked in; and I have spoken with Mr. Klein
21  previously about this possibility. Mr. Rivas, Mr.
22  Klein is an excellent attorney. He's very
23  experienced. I've had the pleasure of having him
24  here in trial, previously; and Mr. Klein, if you
25  would be willing, sir, I'd like to appoint you to

People vs. Rivas - 92-1114-1                                    6

1   represent Mr. Rivas. Would you be willing to
2   accept the assignment?
3           MR. KLEIN: I would, your Honor. We have
4   previously spoken about it, and I have indicated I
5   would do that if it were to arise.
6           THE COURT: Well, thank you. Thank you.
7   Okay.
8           Let me talk to you about a trial date,
9   perhaps the issue of bail.
10          At this point I'd like to set a trial
11  date, however, Richard here at the Bench you've
12  indicated you're anticipating sort of an extended
13  motion practice. You didn't want me to go ahead
14  and set a trial date was my impression. What are
15  your thoughts with regard to that?
16          MR. LANGONE: Well, Judge, I understand
17  the Court's desire to keep control of this docket.
18  We would recommend that if you set a trial date
19  you set it far enough out, perhaps November or
20  December. As I indicated to the Court, I do
21  perceive that there will be extensive motion
22  practice in this case.
23          I have an eleven thousand page transcript,
24  a brief due in the Second Circuit in June that I
25  just started on. So I'm -- I'm in up to my knees

People vs. Rivas - 92-1114-1                                          7

1  so to speak. So, personally, it would be a great
2  help to me to have the motion schedule for me to
3  file motions in July. I could file an omnibus
4  motion, basically all pretty much all at once for
5  the Court to dispose of, but I just need some time
6  in light of this appeal in the Second Circuit.
7       THE COURT: Richard, pardon me for a
8  second.
9       MR. LANGONE: Yes.
10      THE COURT: Mr. Klein, let me ask you
11 about your availability as far as a trial
12 calendar. I'm hearing November, December, I'd
13 like to move this case along as quickly as
14 possible. I'll certainly work, you know, with all
15 of the attorneys regarding that. What's your
16 thoughts?
17      MR. KLEIN: I think, given the history and
18 what's been said here this morning, I think
19 November, December, is moving it along in light of
20 the history of the case.
21      THE COURT: Do the People want to be heard
22 regarding this?
23      MR. MORAN: That time frame works for us,
24 Judge. I would suggest, if it's okay, perhaps the
25 first week in December --

People vs. Rivas - 92-1114-1                                    8

1   THE COURT: First week in December.
2   MR. MORAN: -- to give us some time both
3   to clear the Thanksgiving holiday and enough time
4   before Christmas to get it in.
5   THE COURT: December 7th is that first
6   full week, gentlemen. What I'd like to do, based
7   on what you've indicated today, is schedule this
8   matter for trial on December 7th. If you'd like
9   it moved up and you're able to do that, I'd be
10  happy to accommodate that as well. If it needs to
11  be moved back further, I'll certainly work with
12  all of you. So twelve, seven is our trial date.
13       The last time we were together, Richard,
14  you indicated that you wanted to be heard on the
15  issue of bail. I'm certainly willing to listen to
16  that. I've got a trial that I'm starting up in a
17  little while, so, go ahead if you'd like.
18  MR. LANGONE: Yes, your Honor. Mr. Rivas
19  right now is entitled to the presumption of
20  innocence as the prior conviction has now been
21  vacated. Therefore, the monopoly of rights
22  involving with the CPL to which he is entitled to
23  which includes the consideration of bail pending
24  trial.
25       I would say this, sir, that with respect

People vs. Rivas - 92-1114-1                                    9

1  to the ultimate question of risk of flight, there
2  is none. Mr. Rivas has served almost twenty-two
3  and a half years on this life sentence. He's
4  basically almost served the minimum on his
5  sentence. As I had indicated previously to the
6  Court, there has been no disciplinary history on
7  the part of this man. He has a blemish free
8  institutional record. He was on bail twenty-two,
9  twenty-three, years ago. If he were, God forbid,
10 let's say make believe he were reconvicted, he
11 would -- this Court would be able to consider all
12 of the good things he's done during his time of
13 incarceration and could impose a sentence of
14 actually fifteen years to life.
15     I would note to the Court that the
16 decision of the Second Circuit in this case was
17 that for the first time ever the Second Circuit
18 acknowledged in this case a colorable claim of
19 actual innocence. Again, the facts were almost
20 six years, over five years after -- he was not
21 indicted for almost five years after the homicide
22 occurred because it was Eric Mitchell the medical
23 examiner's opinion that the death occurred between
24 Saturday and Sunday and the People knew they could
25 not convict him during that period of time. It

Case 5:19-cv-00844-BKS-TWD   Document 142-32   Filed 10/31/24   Page 11 of 19
Case 18-2574, Document 179, 09/03/2019, 1600/60, Page105 of 196

People vs. Rivas - 92-1114-1                                               10

1   was only until after Dr. Mitchell was -- viewed
2   brain slides and other evidence that all of a
3   sudden he decided to go back into the file and
4   look at and this changed his opinion with respect
5   to time of death to -- to open the window to
6   include Friday when Hector Rivas did not have an
7   alibi. We know that when the brain slides -- we
8   know that the bases upon which he made his medical
9   determination as to extending the time of death
10  were -- were debunked by Dr. Cyril Wecht in his
11  affidavit in his testimony at the Federal hearing.
12          So this is a case of questionable,
13  questionable, real issues of reasonable doubt here
14  and the Second Circuit determined that. Now, I
15  don't know what the district attorney's is going
16  to come back with going forward, but as it stands
17  and in light of the fact that it took him over
18  five years to indict Mr. Rivas in the initial
19  matter, he has no incentive to flee in this case.
20  He has family ties that have stayed with him
21  throughout the period of -- of incarceration. He
22  has relatives here in this Courtroom right now.
23  He's married. He has a wife, Marilyn, who lives
24  in the Bronx, who's got a stable residence. She's
25  employed. There is -- there is no indication, no

People vs. Rivas - 92-1114-1                                      11

1   reason to believe that he would not be amenable to
2   process of this Court.
3        So for those reasons, Judge, in light of
4   the amount of time that's gone by, the factual
5   weakness of the case, family support, we would
6   respectfully submit that he be released in his own
7   recognizance.  I have no problem -- we have no
8   objection to a GPS bracelet, if that's the Court's
9   desire, and that's -- that's our request at this
10  time, your Honor.  Thank you.
11       THE COURT:  Thank you.  Do the People want
12  to be heard?
13       MR. MORAN:  I do, Judge.
14       First, in response to Mr. Langone's
15  comments about Dr. Mitchell.  I don't believe that
16  the record supports the idea that Dr. Mitchell
17  changed his opinion, that Dr. Mitchell's opinion
18  was in fact a hard she died on Saturday.  I don't
19  think that's true.  There was and there's going to
20  be, I'm sure, some argument and some expert
21  testimony at the trial in this case regarding
22  exactly what the time of death was, but he didn't
23  change his opinion.  His opinion was always, as
24  these things are at the margins, flexible, meaning
25  they can't tell with precision whether we are

Ann A. Makowiec, Supreme Court Reporter

Case 5:19-cv-00844-BKS-TWD   Document 142-32   Filed 10/31/24   Page 13 of 19
Case 15-2974, Document 173, 05/05/2016, 1600735, Page107 of 190

People vs. Rivas - 92-1114-1                                    12

talking about two days or three days past the time of death.

The evidence at the trial in this case will be that Valerie Hill was murdered on that Friday night. That nobody saw her after about eight p.m. on that date. One of the pieces of evidence that was used at the trial in 1993 and that we expect to be at the trial in this case is that she had her car repaired that afternoon and that the odometer reading had been taken.

We know from there she went and picked up some airline tickets that she had purchased through a travel agent and that after that she went home. That route was reconstructed as part of the evidence in this case, and we were able to substantiate the idea that she went from the car repair to pick up her tickets then home. That car never moved from Hickok Avenue, meaning as of Friday night when she got home that car never moved again.

She had planned to take a trip to Saratoga to visit a friend either in the evening of the 27th or the morning of the 28th. She never showed up for that planned weekend with her friend. She did not answer repeated phone calls from multiple

People vs. Rivas - 92-1114-1                                    13

1   people Saturday or Sunday morning which was
2   unusual for her at the time.
3           There will be evidence in the case or at
4   the trial of this case of Mr. Rivas's obsession
5   with Miss Hill. They had a relationship. She had
6   terminated that relationship. For months, he had
7   pursued her obsessively. There was an avalanche
8   of letters sent to her by Mr. Rivas. There were
9   daily visits, sometimes multiple times in the same
10  day, where Mr. Rivas would come to Hickok Avenue
11  looking for her. He would enter her apartment on
12  occasion without her notice when she wasn't home,
13  he followed her and he called her friends
14  sometimes in a drunken state asking where she was
15  and what was going on with her and inquiring about
16  the relationship.
17          Mr. Rivas made some statements as part of
18  the investigation in this case. Those statements
19  were refuted by other more credible witnesses.
20  His account of his visits to Hickok Avenue that
21  night were inconsistent with other evidence. He
22  claims to have visited Hickok on the 27th at about
23  two p.m., then had returned to Cazenovia, made
24  some plans to return back to Syracuse to go to
25  Coleman's and then stopped by at her apartment at

Case 5:19-cv-00844-BKS-TWD   Document 142-32   Filed 10/31/24   Page 15 of 19
Case 18-2974, Document 173, 05/03/2019, 1000780, Page109 of 136

People vs. Rivas - 92-1114-1                                    14

1    six p.m., that she wasn't home, that he slipped a
2    note under her door at six p.m. on the 27th.
3    Other witnesses, neighbors and the like observed
4    Mr. Rivas at that address at about three
5    forty-five staying until about four thirty, give
6    or take, and there were some discrepancy between
7    some of the witnesses but they put him there that
8    afternoon for a relatively long stretch of time.
9    He claimed that she wasn't home at six o'clock,
10   yet other witnesses said they spoke to her on the
11   phone at her apartment at about five thirty.
12          We know she went to dinner that night with
13   her father at about seven p.m. He says he left
14   Coleman's at about eleven and that he went
15   directly to Albert's in Cazenovia.
16          Other witnesses, employees of a liquor
17   store which was on the route between Coleman's and
18   Miss Hill's apartment, say that Mr. Rivas himself
19   came in at about nine fifty and purchased two
20   bottles of alcohol both consistent with bottles
21   recovered at the scene where her body was
22   recovered on Monday.
23          Further, witnesses placed Mr. Rivas's car
24   outside of her apartment between ten thirty and
25   eleven that night, maybe even as late as one.

Case 5:19-cv-00844-BKS-TWD   Document 142-32   Filed 10/31/24   Page 16 of 19
Case 18-2974, Document 173, 09/03/2019, 1660780, Page110 of 196

1   o'clock in the morning on Hickok Avenue.

2   His months, Judge, of obsessive behavior
3   and pursuit of Miss Hill mysteriously end on the
4   28th and 29th where he makes no efforts to contact
5   her presumably, according to our reading evidence,
6   because he knew she was dead.

7   Finally, Judge, two more things. The
8   crime scene, this was not a burglary. There was
9   no sexual assault, although there was some
10  violation of Miss Hill. It was a brutal
11  humiliation and murder of a twenty-eight year old
12  nurse who otherwise was not involved in any kind
13  of scenario where you would expect that to happen.

14  Finally, Judge, Mr. Rivas made a sort of
15  drunken confession where he says Valerie, Valerie,
16  I didn't mean to do it, overheard by one of his
17  friends.

18  Judge, I summarize the evidence because,
19  ultimately, this case is going to go to trial, and
20  the evidence that this jury is going to hear in
21  2015 is not substantially different than what it
22  heard in 1993, and we'll see what that jury thinks
23  of this evidence, but this evidence is, in the
24  People's opinion, strong. He we look forward to
25  having a day in Court and putting this case before

People vs. Rivas - 92-1114-1                                  16

1  a new jury in 2015.
2         For the reasons, Judge, I've laid out, we
3  do think Mr. Rivas is a flight risk, and we are
4  asking you to either set no bail or set one
5  million dollars cash or two million dollars bond.
6         THE COURT: First, before I rule on the --
7  on the bail issue. Mr. Moran, it's my
8  recollection that our last time that we were all
9  together that the People announced ready for
10 trial.
11        MR. MORAN: We did.
12        THE COURT: Now that this has been
13 vacated, are the People re announcing their
14 readiness for trial?
15        MR. MORAN: We are, Judge.
16        THE COURT: Okay. Taking into
17 consideration what Mr. Langone has said on behalf
18 of the defendant, as well as what Mr. Moran has
19 said on behalf of the People, I am going to set a
20 bail in the amount of five hundred thousand
21 dollars cash or bond; five hundred thousand cash
22 or bond. I will adjourn this matter for thirty
23 days to May 26th for control purposes.
24        Why don't I give you a motion schedule
25 today as well. Your motions should be filed on or

People vs. Rivas - 92-1114-1                                  17

1  before June 4, People's response June 11th.  We'll
2  argue motions here in Court on June 18th.
3          MR. LANGONE:  Your Honor --
4          THE COURT:  Yes.
5          MR. LANGONE:  July is impossible to do
6  this because June is when I have this appeal due.
7          THE COURT:  Absolutely.
8          MR. LANGONE:  Could we make it July 4th or
9  that's not going to work, July 4th.
10         MR. MORAN:  Can we approach, Judge, to
11 discuss dates?
12         THE COURT:  Where is Ed?  Is Ed still in
13 the Courtroom?  Ed, come on up, please.
14         (Whereupon, Counsel approached the Bench
15 and an off-the-record discussion ensued.)
16         THE COURT:  Okay.  Pretrial conference May
17 26th.  Motion schedule is as follows:  Defendant
18 to file any motions on or before August 10.
19 People's response nine, fourteen; September 14.
20 We'll argue motions here in court on September
21 21st.  See you back here May 26th.  Thank you.
22         MR. MORAN:  Thank you.
23         MR. LANGONE:  Thank you.
24         THE COURT:  Trial date December 7th.
25

Ann A. Makowiec, Supreme Court Reporter

P011445

Case 5:19-cv-00844-BKS-TWD    Document 142-32    Filed 10/31/24    Page 19 of 19
Case 15-2574, Document 173, 05/05/2016, 1766050, Page113 of 196

People vs. Rivas - 92-1114-1                                    18

```
 1                    *    *    *    *

 2                    C E R T I F I C A T E

 3         This is to certify that I am a Senior Court

 4    Reporter of the Fifth Judicial District; that I attended

 5    and reported the above-entitled proceedings; that I have

 6    compared the foregoing with my original minutes taken

 7    therein, and that it is a true and correct transcript

 8    thereof and all of the proceedings had therein.

 9

10                    _____
                      Ann A. Makowiec,
11                    Official Court Reporter

12    Dated:   April 28, 2015
```