**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------X

SIDNEY MANES, Administrator of the Estate of
HECTOR RIVAS,

                    Plaintiff,

          -against-

ONONDAGA COUNTY, CITY OF SYRACUSE,
WILLIAM FITZPATRICK, DR. ERIK MITCHELL,
and "JOHN DOES 1-10",

                Defendants.

--------------------------------------------------------------------X

No. 19 Civ. 844 (BKS) (TWD)

**PLAINTIFF'S RESPONSE TO DEFENDANT FITZPATRICK'S STATEMENT OF UNDISPUTED FACTS PURSUANT TO LOCAL CIVIL RULE 56.1(b)**

       Plaintiff SIDNEY MANES, Administrator of the Estate of HECTOR RIVAS, as and for his Response to Statement of Undisputed Facts on Behalf of William Fitzpatrick in Support of His Motion for Summary Judgment (Dkt. 141-1), states as follows:

      1.      Sidney Manes represented the Decedent Rivas before and after the 440 Motion. (Ex. D-1, EBT I, p. 16).

    <u>Plaintiff's response</u>: Admitted.

      2.      Manes did not ask Richard Calle for his file. (Ex. D-1, EBT I, p. 19).

    <u>Plaintiff's response</u>: Admitted.

      3.      Manes did not ever see Calle's file. (Ex. D-1, EBT I, p. 19).

    <u>Plaintiff's response</u>: Admitted.

4.      Manes did not ever have discussions with any lawyers who said they had his file. (Ex. D-1, EBT I, p. 19)

Plaintiff's response: Admitted.


5.      Richard Priest had said he had seen the file. (Ex. D-1, EBT I, p. 19-20)

Plaintiff's response: Disputed. This proposition is not supported by the cited testimony, in which Mr. Manes states he was informed that Priest may have taken Mr. Rivas' appeal, and that he was not aware of a Central New York News article in which Mr. Priest said he had reviewed Mr. Calle's file.

6.      Manes never talked with anyone either in his capacity as attorney for Rivas or as administrator of the estate as to the whereabouts of the file. (Ex. D-1, EBT I, p. 20).

Plaintiff's response: Admitted.


7.      Manes never asked Rivas or any of his lawyers where Mr. Calle's file was. (Ex. D-1, EBT I, p. 20)

Plaintiff's response: Admitted.


8.      Manes described his role in representing Rivas at page 21, appears to be trying to take on Rivas' case and follow through with the habeas corpus. (Ex. D-1, EBT I, p. 21).

Plaintiff's response: Disputed. This is not what the cited testimony states. Manes testified that he spoke to another attorney, Kim Zimmer, about taking on Rivas' case because Manes is not a criminal attorney and had "no idea what the hell to do" to help Rivas.

9.      Manes did not ask Attorney Kimberly Zimmer about the status of Calle's file. (Ex. D-1, EBT I, p. 21).

Plaintiff's response: Admitted.


10.     Manes acknowledged that he did not ask anyone where Calle's file was. (Ex. D-1, EBT I, p. 21-22).

Plaintiff's response: Admitted.


11.     Manes did not ever see Calle's file stating, "I did not see Mr. Calle's file at any time that I can recall in all of the years that I have been involved with Mr. Rivas." (Ex. D-1, EBT I, p. 22).

Plaintiff's response: Admitted.


12.     No lawyer to his knowledge had told Manes that he had seen Mr. Calle's file. (Ex.D-1, EBT I, p. 22).

Plaintiff's response: Admitted.


13.     In fact, Calle testified before Judge Brunetti that neither Manes nor any other counsel for Rivas asked him for his file as part of that proceeding. (Ex. D-1, EBT I, p. 22).

Plaintiff's response: Deny that the cited testimony states this fact. Mr. Manes was asked if Mr. Calle testified before Judge Brunetti, to which Mr. Manes responded, "yes." The substance of Mr. Calle's testimony was not part of this question or response.

14.     Manes understands that file is defined as all the records, notes and documents that Calle had with regard to his preparation for the trial and the trial of Rivas. (Ex. D-1, EBT I, p. 22).

Plaintiff's response: Admitted.


15.     Sidney Manes met with Rivas twenty times.  He does not remember that he ever took any notes in meeting with Rivas. (Ex. D-1, EBT I, p. 23).

Plaintiff's response: Admitted.


16.     Manes did discuss the facts in the case but he can only talk from his recollection. (Ex. D-1, EBT I, p. 23).

Plaintiff's response: Disputed. At the cited page of testimony, Manes was asked whether he ever spoke with Rivas about the facts of this case and Manes answered, "I believe that was part of our discussion, but I can only tell you from my recollection."


17.     When Manes met with Mr. Rivas at least twenty times, he did not write anything down in terms of any of their discussions.  He did speak with Rivas about the facts in the case. (Ex. D-1, EBT I, p. 23).

Plaintiff's response: Disputed. At the cited page of testimony, Manes testified that he did not "remember" taking notes, and that his "recollection" was that he discussed the facts of the case with Rivas.

18.     Manes recalls discussing where Rivas was on Friday, March 27 at 11:00 p.m. and 2:30 that morning but he didn't make any notes. He just recalls he felt he had an alibi for that time. (Ex. D-1, EBT I, p. 24).

Plaintiff's response: Disputed. At the cited page of testimony, Manes testified, Rivas "had an alibi for the time" and he "talked about Coleman's Restaurant."

19.     Manes did not discuss with Rivas whether he was at Hill's apartment at 11:00 in the evening on that day. (Ex. D-1, EBT I, p. 24-25).

Plaintiff's response: Disputed. The cited testimony does not support the assertion. At the cited page of testimony, Manes was asked, "Did you ask Mr. Rivas was he sitting in front of [Hill's] apartment smoking a cigarette at or around 11 p.m. on March 27th, 1987?" to which he testified, "I never asked that question."

20.     Manes read the trial testimony and was aware that there were witnesses who said that Rivas was seen in front of her apartment at that time. (Ex. D-1, EBT I, pgs. 24-26).

Plaintiff's response: Admit that Manes testified to reading to trial testimony. Deny that he was aware of the witnesses' testimony as described. Manes specifically stated that he could not pinpoint whether he heard this testimony, after which counsel asked Manes to assume that there were, in fact, witnesses who testified to this effect.

21.     Manes never asked Rivas if he was in front of her apartment at or around 11:00 p.m. on March 27, 1987. (Ex. D-1, EBT I, p. 26).

Plaintiff's response: Disputed. In the cited testimony, Manes was asked, "Did you ask Mr. Rivas was he sitting in front of [Hill's] apartment smoking a cigarette at or around 11 p.m. on March 27th, 1987?" to which he responded, "I never asked that question."

22.     Manes never asked Rivas if he had a key to the apartment although Manes did remember that a key was recovered by the police in Rivas' custody.  (Ex. D-1, EBT I, pg. 26).

Plaintiff's response: Admitted.

23.     Manes did not ask Rivas about his relationship with Ms. Hill. (Ex. D-1, EBT I, p. 26).

Plaintiff's response: Disputed. In the cited testimony, Manes testified that he did not recall asking Rivas to describe to him (Manes) the nature of Rivas' relationship with Hill.

24.     Manes did not ask Rivas if he told his friends Valerie Hill was not well enough to come to a party on March 29. (Ex. D-1, EBT I, p. 27).

Plaintiff's response: Admitted.

25.     Manes did not ask Rivas if he ever said in the company of another person "Valerie, Valerie, I didn't mean to do it." (Ex. D-1, EBT I, p. 27).

Plaintiff's response: Admitted.

26.     Manes never asked Rivas if he erected a shrine to Valerie in his house. (Ex. D-1, EBT I, p. 27-28).

Plaintiff's response: Disputed. In the cited testimony, there is no answer from Manes to the question, "Did you ask him if he had erected a shrine of some type to Valerie Hill in his house?" Instead, Manes testified that he did not ask Rivas if he had a photo of Valerie Hill in his house.


27.     Manes never spoke with William Fitzpatrick about this case. (Ex. D-1, EBT I, p.29).

Plaintiff's response: Admitted.


28.     Manes never spoke with Erik Mitchell about this case. (Ex. D-1, EBT I, p. 29).

Plaintiff's response: Admitted.


29.     Manes never spoke with Dr. David Rigle about this case that he can remember. (Ex. D-1, EBT I, p. 30).

Plaintiff's response: Admit that Manes testified he could not remember speaking to Dr. Rigle about the case.


30.     Manes never spoke with Dr. William Sawyer about this case. (Ex. D-1, EBT I, pg. 30).

Plaintiff's response: Admit that Manes testified he did not recall talking to Dr. Sawyer.

31.      Manes never spoke with Mr. Richard Calle about this case. (Ex. D-1, EBT I, pg. 30).

Plaintiff's response: Admitted.


32.      Manes never spoke with any of the witnesses that testified at the trial. (Ex. D-1, EBT pp. 30-31).

Plaintiff's response: Admitted.


33.      Manes spoke with Rob Moran, the Assistant District Attorney handing the re-trial, to say good morning to him. (Ex. D-1, EBT I, p. 31).

Plaintiff's response: Admit with clarification for completeness: Manes testified that he "was in the court room with Mr. Klein on a number of occasions when we were before the court, and I stood there with him and Hector was there and I talked to Moran, said good morning or good afternoon, whatever it was, but that's about the extent of it. He was represented by Mr. Klein, and Mr. Klein asked him the questions, not me."


34.      Manes testified in the habeas corpus proceeding. (Ex. D-1, EBT I, p. 31).

Plaintiff's response: Admitted.


35.      Manes collected $25,000 in a medical malpractice case for Rivas. (Ex. D-1, EBT I, p. 32).

Plaintiff's response: Admit with clarification: Manes testified that he was not sure if the case in which he represented Rivas was medical malpractice or negligence, and that he believed $25,000 was recovered.

36.      Manes does not remember bringing an actual innocence claim against the State for Rivas. (Ex. D-1, EBT I, p. 32-33). He testified that his information and belief is what he remembers and what he surmises. (Ex. D-1, EBT I, p. 34-35).

      Plaintiff's response: Admit that Manes cannot recall bringing an actual innocence claim under article 8 of the Court of Claims Act; and dispute the second assertion as misleading and incomplete. In response to being asked what "information and belief" means to him, Manes testified: "Well, it's what I remember and what we have been able to surmise from the information that has been provided over the course of time."

37.      Paragraph 63 of the Complaint states: "Rivas' alibi was uncorroborated and incomplete for a three and a half hour window between approximately 9 p.m. on Friday, March 27th 1987 and 12:30 a.m. on Saturday, March 28th, 1987." (Ex. D-1, EBT I, p. 36). He stated he did not know how that information was obtained. (Ex. D-1, EBTI, pg. 37).

      Plaintiff's response: Admit that paragraph 63 alleges the quoted language. Deny that Manes stated that he did not know how the information was obtained. When asked about this paragraph of the Complaint, Manes testified: "As I remember, [Rivas] himself corroborated where he was. He was at Albert's – he was at Albert's and then he went to Coleman's, and then he went back to Albert's and he – that's my best recollection." He went on to testify that he did not personally investigate the information, but hired counsel to do so. *See* Def. Ex. D-1 at 36:11–38:6.

38.     Manes didn't ask Mr. Rivas about two witnesses who saw Rivas in front of Hill's house at 11:00 p.m. on 3/27.  Mr. Manes stated "I believed him. I believed he was innocent." (Ex. D-1, EBT I, p. 40).

Plaintiff's response: Deny as misleading and incomplete. At the cited page of his deposition, Manes testified as follows:

> **Q:** . . . but you also knew that there were witnesses who saw -- who claim they saw him at or around 11 o'clock at night in front of her house, correct, on Friday night?
>
> **A:** I don't know how he got those witnesses.
>
> **Q:** Thank you. But my question, Mr. Manes, is simply why didn't you ask Mr. Rivas about that?
>
> **A:** I believed him. I believed he was innocent.

39.     Manes alleged, "The prosecution had no reasonable or probable cause to believe that Rivas had anything to do with the murder and sexual assault of Hill -  and therefore, no case against him for those crimes -  unless it could prove that Hill died Friday night, March 27th, 1987." (Ex. D-1, EBT I, pg. 38).

Plaintiff's response: Admitted.

40.     Manes admitted he did not ask Rivas about the witnesses who testified at trial that they saw Rivas in front of Valerie Hill's house at 11:00 that night. (Ex. D-1, EBT Ip. 40)

Plaintiff's response: Admit that Manes did not ask Rivas about the witnesses because Manes stated that he believed Rivas was innocent.

41.     Manes was then asked about paragraph 65 of the Complaint in which he alleged "Shortly after becoming district attorney, Fitzpatrick approached Mitchell, the medical examiner, and requested that he revise Hill's autopsy report to expand the time of death to include Friday, March 27th, 1987 when Rivas' alibi was not as strong." (Ex. D-1, EBT I, p. 40).

Plaintiff's response: Admit Manes was asked this question.


42.     With regard to the basis for the allegation in Paragraph 65, Manes was not present for any discussion between Mitchell and Fitzpatrick and did not know of anyone else who was present for discussions in which Fitzpatrick asked Mitchell to revise the autopsy report. (Ex. D-1, EBT I, p. 43).

Plaintiff's response: Admitted.


43.     There is no factual basis for the allegation in paragraph 67 of the Complaint that "Fitzpatrick promised Mitchell that if Mitchell revised and expanded Hill's time of death to include Friday, March 27, 1987, that Fitzpatrick would make the investigations into Mitchell's conduct go away." (Ex. D-1, EBT I, p. 47).

Plaintiff's response: Disputed. What is asserted in paragraph 43 of Defendant Fitzpatrick's 56.1 Statement is a legal argument, not an undisputed fact and the cited testimony does not support the argument.


44.     The representation by Police Officer Timothy Phinney requesting a search warrant of Rivas' apartment states "That the Onondaga County Medical Examiner's Office, Dr. Mitchell's preliminary estimate on the time of death of the victim was sometime Saturday the

28th of March afternoon and Sunday morning the 29th of March 1987" is not a statement authored by Dr. Mitchell.

Plaintiff's response: Disputed. Defendant Fitzpatrick has not cited admissible evidence to establish that this assertion is undisputed. In any event, it is disputed whether Dr. Mitchell told Officer Phinney that his preliminary estimate of Hill's time of death was March 28th to March 29th, 1987. The fair inference from Officer Phinney's affidavit is that Dr. Mitchell provided this information to Officer Phinney.


45.     Mitchell did not sign any document or affidavit indicating the time of death other than his writing in the Medical Examiner's Record dated 3/30/87 in which he states appears as though decedent was there approximately 2-3 days. (Ex. A, pg. 17).

Plaintiff's response: Disputed. What is asserted in paragraph 45 of Defendant Fitzpatrick's 56.1 Statement is a legal argument, not an undisputed fact. The argument overlooks Mitchell's signed October 23, 2024 affirmation in which he opines on Hill's time of death.


46.     Manes was not present and did not overhear any conversation between Fitzpatrick and Mitchell which pertained to the allegation in paragraph 68 of the Complaint. (Ex. D-1, EBT I, p. 69).

Plaintiff's response: Admit with clarification. Manes testified, "I was not present when the statement was made by and the relationship that was made between Mitchell, Fitzpatrick and Sidney Cominsky."

47.     Manes acknowledged he did not know if the deal he is alleging between Sidney Cominsky, Dr. Mitchell and District Attorney Fitzpatrick was made before Mitchell testified to the Grand Jury in November of 1992. (Ex. D-1, EBT I, p. 70).

Plaintiff's response: Admitted.


48.     Mitchell made no mention of autopsy related slides in his testimony before the Grand Jury. (Ex. D-2, EBT II, p. 10).

Plaintiff's response: Admitted.


49.     Manes acknowledged Mitchell never put into a signed statement that he was aware of in which he modified the time of death. (Ex. D-2, EBT II, p. 12-13).

Plaintiff's response: Admit with clarification for completeness. Manes testified, "There is no signed statement that I know that I reviewed about the time of death that [Mitchell] had testified to or signed a document. I don't know about that. Maybe he did. I have no idea."


50.     Manes acknowledges that he did not hear "I didn't hear him say you can go free if you change your testimony. I didn't hear any of that. But I know he had a lawyer with him and they had a conversation in court." (Ex. D-2, EBT II, p. 14).

Plaintiff's response: Admit that this was Manes' testimony.

51.     Manes claims in his deposition that there were misdemeanors outstanding against Dr. Mitchell for his operation as the Medical Examiner. (Ex. D-2, EBT II, p. 16).

Plaintiff's response: This is an improper legal argument. Manes did not "claim[]," rather, he testified in his deposition as follows:

> There were misdemeanors outstanding against Doctor Mitchell for his operation as medical examiner. He was burying body parts. He was selling body parts. He was pouring blood down the drain. This was all documented by people who worked for him. At that point in time I think there were over a hundred misdemeanors. There might have even been a couple of felonies, as I remember. He was being examined, Doctor Mitchell was, by the Health Department as to the operation of his department. So there was a lot going on with Doctor Mitchell at that point. And he was, in my opinion, also considered because Doctor Gordon had worked as an intern at the pathologists at his medical examination. He was very much involved and attracted to her. So there was a lot going on at the time.

52.     Manes alleged there were 100 misdemeanors. (EBT II p. 16-17) There were no misdemeanors ever pending against Mitchell. (Ex. I, pg. 27).

Plaintiff's response: Disputed. This is an improper legal argument. Manes did not "allege[]," rather, he testified, "*I think* there were over a hundred misdemeanors." Ex. D-2 at 16:23. The cited testimony does not support the proposition, "[t]here were no misdemeanors ever pending against Mitchell." In fact, the record evidence includes a front-page article from *The Post-Standard*, dated June 14, 1995, concerning the Onondaga County Medical Examiner's Office's practice under Mitchell of retaining or donating body parts without permission from the decedent's family. DOH File at 437. That article went on to say:

> It was that practice that brought the most serious allegations against the county during the Mitchell investigation.
>     The state was prepared last year to charge the county with the equivalent of three felony bodystealing charges and 144 misdemeanor charges of unauthorized dissection of a body.

*Id.*

53.     Manes claimed Mitchell had a couple felonies pending against him. (Ex. D-2, EBT II, p. 16-17).  There were no felonies ever pending against Mitchell.  (Ex. I, pg. 27).

Plaintiff's response: Disputed. This is an improper legal argument. Manes did not "claim[]," rather, he testified, "there *might* have even been a couple of felonies, as I remember." Ex. D-2 at 16:24-25. The cited testimony does not support the proposition, "[t]here were no felonies ever pending against Mitchell." In fact, the record evidence includes a front-page article from *The Post-Standard*, dated June 14, 1995, concerning the Onondaga County Medical Examiner's Office's practice under Mitchell of retaining or donating body parts without permission from the decedent's family. DOH File at 437. That article went on to say:

> It was that practice that brought the most serious allegations against the county during the Mitchell investigation.
>     The state was prepared last year to charge the county with the equivalent of three felony bodystealing charges and 144 misdemeanor charges of unauthorized dissection of a body.

*Id.*

54.     Manes acknowledged that the language in paragraph 76 of the Complaint that a deal had been brokered with Fitzpatrick in exchange for expanding Hill's time of death to include Friday, March 27, 1987 was based on an assumption. (Ex. D-2, EBT II, p. 19).

Plaintiff's response: Disputed. This is an improper legal argument and the cited testimony does not support the assertion.

55.     Manes testified he could only assume that a deal was brokered before Mitchell testified before the Grand Jury. (Ex. D-2, EBT II, p. 22).

Plaintiff's response: Disputed: the cited testimony does not support the assertion.

56.     Manes testified with regard to the claims in the Complaint up through paragraph 83 "I am assuming there had to be some sort of meeting between Doctor Mitchell and Fitzpatrick to have worked out some sort of arrangement. It certainly seems to me to be the case." (Ex. D-2, EBT II, p. 32).

Plaintiff's response: Disputed. Manes was not asked and did not testify "with regard to the claims in the Complaint up through paragraph 83." Rather, Manes' quoted testimony about "assuming" is in reference to his assumption that Fitzpatrick and Mitchell reached an agreement by which Mitchell would not face prosecution if he left the Onondaga County Medical Examiner's Office. Fitzpatrick admits there "was an agreement with Dr. Mitchell's attorney Sidney Cominsky." Fitzpatrick Aff. ¶ 23(11). Moreover, there is record evidence that, "Fitzpatrick told Mitchell's lawyer that if Mitchell resigned, the criminal investigation would end." DOH File 9; *id.* at 23 ("Mitchell submitted his resignation as medical examiner in November 1993 while facing a threat of criminal prosecution by the District Attorney's Office."); *id.* at 24 ("Mitchell, who resigned in November 1993 after prosecutors agreed not to present evidence of possible crimes to a grand jury, has maintained his innocence"); *id.* at 25 ("Mitchell resigned in November under threat of prosecution."); *id.* at 33 ("When Mitchell resigned in November, he maintained he'd done nothing wrong, and that the state investigation would exonerate him. Mitchell's lawyer, Sidney Cominsky, said last week the state plea bargained the case because the evidence was weak."); *id.* ("Fitzpatrick refused to comment Sunday. He has said he found evidence that Mitchell misappropriated bodies. But he chose not to go forward with criminal charges because Mitchell resigned."); *id.* at 35 ("District Attorney William Fitzpatrick said he would have presented possible criminal charges against Mitchell to a grand jury if he had not resigned.").

57.     The transcript of the appearance before the Second Circuit (Exhibit 0) at page 185419, Manes acknowledged that the DA wasn't investigating until the trial was over. "If you will forgive me, Your Honor, she indicates the DA wasn't investigating, that may be true." (Ex. D-2, EBT II, p. 46).

Plaintiff's response: Disputed. At page 185419 of Defendants' Exhibit O, Manes does not "acknowledge[] that the DA wasn't investigating until the trial was over." Instead, Manes' statement makes clear that he was saying the DA would have prosecuted, not investigated, these particular allegations because the investigation would be done by the Department of Environmental Conservation. Ex. O at 185419. Manes' deposition testimony was to the same effect: "[i]t wasn't [the District Attorney's] job [to investigate Mitchell for environmental issues]. That was the DEC's job to investigate environmental concerns. He [the District Attorney] would have prosecuted Mitchell for the misdemeanors, absolutely. So he wasn't investigating. It was the DEC that did the investigating." Ex. "D-2" at 46:23-47:3. Also, in the cited transcript from the Second Circuit, the New York State Assistant Attorney General represented that the allegations about Mitchell's integrity were circulating "in 1992/1993." Ex. O at 185419. Rivas' trial took place in March 1993.


58.     In his deposition, Manes conceded in that sentence the District Attorney was not investigating until after the Rivas trial stating, "It wasn't his job." (EBT II p. 46)

Plaintiff's response: Disputed. *See* Response to ¶ 57.


59.     Manes testified he doesn't know if the DA would be aware of any DEC investigation before he proffered any charges. (Ex. D-2, EBT II, p. 51-53).

Plaintiff's response: Disputed. There is no basis for this statement on the cited pages and there is record evidence from which a jury can find that Fitzpatrick was aware of the investigations surrounding Mitchell before Rivas' trial. Fitzpatrick Aff. ¶ 21 (Fitzpatrick admits that he "did attend a press conference called by Dr. Mitchell on March 3, 1993 regarding the State Health Department investigating his department.").

60.    Attorney Klein, Mr. Rivas' defense counsel for the retrial, asked for adjournments of the December 2015 and March 2016 trial dates. Mr. Rivas was present as counsel, and did not object. (Ex. S-3, pgs. 4-7).

Plaintiff's response: Disputed. In the cited transcript pages, Klein did not seek an adjournment of the March 2016 trial dates; rather, Klein *requested* the trial go forward in March 2016. Moreover, while there is no objection from Rivas in the transcript of the court conference, there is no support for the assertion that Rivas did not object to his re-trial being adjourned while he remained incarcerated, contrary to the Second Circuit's mandate.

61.    Contrary to the claim in the Complaint with regard to paragraphs 101-103 of the Complaint, Manes acknowledged that no one had told him that Fitzpatrick admitted he deliberately withheld information regarding Patsy Barricella and Joe Morgan. (Ex. D-3, EBT III, p. 10).

Plaintiff's response: Disputed. This is a legal argument rather than a factual assertion. Moreover, in response to the question "Has anyone told you that Fitzpatrick acknowledged that he deliberately withheld this document?" Manes testified, "not that I remember." This testimony is not "contrary to" the cited paragraphs of the Complaint.

62.     Manes testified that he does not claim in paragraphs 104-111 of the Complaint that Fitzpatrick did any wrong or inappropriate except the introduction of a library book. (Ex. D-3, EBT III, pg. 10-11).

Plaintiff's response: Disputed. This is a legal argument rather than a factual assertion. Moreover, this mischaracterizes Manes' testimony. In response to the question whether Manes was claiming Fitzpatrick did anything "inappropriate with regard to paragraphs 104 to 111," Manes testified, "The only thing that I recall was that there were fingerprints on the book that were never identified as being Mr. Rivas' There were other people that were never identified." Manes went on to describe additional misconduct.

63.     Manes acknowledged that Rivas was given the opportunity to adjourn the trial as it pertains to Barricella by the trial Judge and chose not to. (Ex. D-3, EBT III, p. 12).

Plaintiff's response: Although this is a legal argument rather than a factual assertion, admit that Manes testified that, as he could recall from the trial record, Rivas' attorney was given the opportunity to adjourn and chose not to.

64.     Manes testified that "the brain slides were never examined by Mr. Calle, and Mr. Calle was not prepared for this trial.  He did a very ineffective defense for Mr. Rivas." (Ex. D-3, EBT III, p. 34).

Plaintiff's response: Admit that Manes testified, "The records said when he testified in the grand jury, that there were notes and there were brain slides or slides - excuse me - and the notes were never examined by Mr. Calle, the brain slides were never examined by Mr. Calle, and

Mr. Calle was not prepared for this trial. He did a very ineffective defense for Mr. Rivas. Now, that's what the record says." Exhibit "D-3" at 33:24-34:5.

65.     Mr. Klein was critical of the representation of Mr. Rivas provided by Mr. Calle at trial. (Ex. S-4, pg. 6).

Plaintiff's response: Dispute that the cited testimony supports this proposition.

66.     Manes was critical of the representation provided by Mr. Calle at trial. (Ex. D-3, EBT III, pg. 31).

Plaintiff's response: Disputed. Manes testified that Calle "was found to be ineffectual in his handling of Mr. Rivas' case" by the Second Circuit. The statement does not reflect Manes' personal opinion.

Dated:  January 13, 2025

THE LAW OFFICE OF JOSHUA MOSKOVITZ, P.C.

/s/
Joshua S. Moskovitz

RICKNER PLLC

/s/
Rob Rickner
Stephanie J. Panousieris

SCOTT A. KORENBAUM, ESQ.

/s/
Scott A. Korenbaum