Rickner | Moskovitz

Joshua S. Moskovitz, Principal | (212) 300-6506 | josh@rmcivilrights.com

May 18, 2026

Hon. Brenda K. Sannes
United States District Court
Northern District of New York
100 S. Clinton Street
Syracuse, New York 13261

Re: *Rivas v. Onondaga County* et al., No. 19 CV 844 (BKS) (CBF)

Dear Judge Sannes,

We represent Plaintiff Flora Rivas, Executor of the Estate of Hector Rivas. We write to advise the Court that because of District Attorney William Fitzpatrick's public efforts to undermine the parties' settlement and poison the prospective jury pool, Plaintiff must move for a change of venue. Plaintiff will also seek sanctions for Mr. Fitzpatrick's violations of the Court's confidentiality orders governing Mandatory Mediation and his bad faith efforts to interfere with the usual legislative process to thwart the settlement – actions that have prejudiced the fair administration of justice.

Days before the Onondaga County Legislature was scheduled to vote on the settlement at its February session, Mr. Fitzpatrick publicly disclosed the confidential amount of the settlement and made unethical statements meant to poison public perception of the settlement and taint the prospective jury pool. Mr. Fitzpatrick sent a lengthy letter to the press[1] and disclosed the amount of the settlement – a detail that was not publicly known because it was agreed to in a confidential mediation and only revealed in an executive legislative session.[2] Among other things, Mr. Fitzpatrick said: "'It's a million dollars that could be going to school kids or police officers or ambulance services or anything . . . . **Instead it's going to this scumbag's family. It makes me sick.**'"[3]

Mr. Fitzpatrick also engaged in a campaign to influence County legislators by contacting legislators directly without giving advance notice to the County's attorneys as

[1] *See* Jon Moss, *The Post-Standard*, "A 39-year saga: County to pay $1M over man's murder conviction. 'It makes me sick,' DA says" (Jan. 30, 2026) (attached as Ex. 1) ("Fitzpatrick . . . sent an 11-page letter to syracuse.com | The Post-Standard . . . .").

[2] Executive sessions, because they may involve "discussions regarding proposed, pending or current litigation," are closed to the public. N.Y. Pub. Off. Law §§ 103, 105. Onondaga County Code of Ethics § 3.1(b) prohibits officials from disclosing "information which is lawfully confidential and acquired by them in the course of their official duties."

[3] Laura Robertson, *Central Current*, "Onondaga County Legislature rejects $1M settlement to end decades-long legal saga" (Feb. 5, 2026) (emphasis added) (attached here as Exhibit 2).

required by Rule 4.2(c) of the N.Y. Rules of Professional Conduct.[4] The press reports confirm that Mr. Fitzpatrick's efforts influenced Republican legislators to vote against the settlement: "Asked whether the Republican Fitzpatrick's comments influenced GOP legislators, [Minority Leader Brian] May did not answer directly but said legislators did their own research. 'There were a lot of comments on the case. When people see a million dollars, there's all kinds of comments that come along . . . . We did our homework, and that's where we landed.'"[5] Mr. May's statement, "When people see a million dollars, there's all kinds of comments that come along," is revealing because the only public disclosure of the amount of the settlement came from Mr. Fitzpatrick days ahead of the legislative session; and the public comments were directly caused by Mr. Fitzpatrick's disclosure of the confidential settlement amount.

Mr. Fitzpatrick's surreptitious efforts proved successful. The Republican caucus unexpectedly voted against the settlement; and with one Democrat legislator absent and another recused, there were not enough votes to reach the nine-vote threshold to approve the settlement. This was not politics as usual. Shortly after the vote, it was reported that Legislature Chair Nicole Watts was "surprised when Republicans voted against the deal. 'I was not given a heads up in advance. There was nothing in the discussion prior that led me to believe that that was where that was headed,' she said."[6]

Mr. Fitzpatrick's efforts did not end there. He continued to corrupt the legislative process to stymy the County's efforts to move the settlement through the legislative process. Repeatedly, the County agreed to standard procedural steps to bring the settlement to a vote of the full legislature. But each time, the County failed to fulfill those agreements without credible explanation.

First, the County agreed to present the settlement for a vote of the full Legislature at its April session. That did not happen, and the County's attorneys gave conflicting explanations for the reason. Then, the County said it would present the settlement to the Public Safety Committee at its late-April meeting. But instead of putting the settlement on the Public Safety Committee agenda – as we were told the Chair of the Legislature had directed – an "inexperienced legislative staff member" put the settlement on the agenda of

[4] Rule 4.2(c)'s no-contact rule applies to "[a] lawyer who is acting pro se or is represented by counsel." The New York State Bar Association and American Bar Association have interpreted Rule 4.2 to require advance notice to counsel before opposing counsel (or an opposing party, in the case of a lawyer) contacts officials who make decisions for the opposing party's governing body. *See* N.Y.S. Bar Ass'n Opinion 812 (May 3, 2007); ABA Committee on Ethics and Professional Responsibility, Formal Op. 97-408 (1997). The County and Mr. Fitzpatrick are both parties to this proceeding and are represented by separate counsel (and the fact that Mr. Fitzpatrick was granted summary judgment does not alter this analysis since there is no final judgment and the appellate process has not been exhausted).

[5] Tim Knauss, *The Post-Standard* "Onondaga County legislators reject $1 million settlement over 1987 murder case (Feb. 3, 2026) (attached as Exhibit 3).

[6] *See* Ex. 1.

Ways and Means Committee. Coincidentally, Minority Leader Brian May sits on the Ways and Means committee and was the only County legislator who voiced any concern about the settlement when it first went through that committee in January 2026.[7] Finally, the County said the settlement would be presented for a vote of the full legislature at its May session, but that did not take place.

The fact that each of these steps was scuttled was highly unusual, and the irregularity of the process was obvious to all. Even the County's attorneys were frustrated with the process, as they acknowledged to us: "We share, and are sensitive to, your frustration with the lack of certainty and regularity in this process, **which has been unprecedented**."

The result of Mr. Fitzpatrick's efforts is the Legislature has given up on attempting to approve the settlement. Further confirming that Mr. Fitzpatrick has irreparably poisoned the legislative well, the County has given no indication that it will consider *any* settlement of this matter, despite the County Attorney's recommendation of a $1 million settlement.

In his campaign to impede the parties' efforts to resolve this case, Mr. Fitzpatrick violated Section 3.8 of the Court's General Order 47, which demands strict confidentiality in Mandatory Mediation. Mr. Fitzpatrick also violated the Confidentiality Agreement for the Conduct of Mediation to which he was a party.[8] Mr. Fitzpatrick further violated various New York Rules of Professional Conduct governing his conduct as an attorney.[9]

Based on these events, Plaintiff is preparing to take the following steps:

*First*, Plaintiff will be filing a motion to change venue. Mr. Fitzpatrick's malicious public statements have irreparably poisoned the jury pool in this district. Mr. Fitzpatrick's statements were prejudicial and salacious, and they would never be admissible at trial in this matter (*e.g.*, "Fitzpatrick has said there is a 'mountain' of other evidence showing Rivas is guilty. . . 'In the pantheon of cases that I've tried, it's one of the strongest circumstantial

---

[7] *See* Ways & Means Committee Minutes at 6 (Jan. 27, 2026), *available at* https://onondaga.gov/legislature/wp-content/uploads/sites/201/2026/02/1.20.26-Ways-and-Means-Minutes.pdf.

[8] *See* Confidentiality Agreement for the Conduct of Mediation (Dkt. 185) (attached as Exhibit 4) (signed by Robert F. Julian, Esq. on behalf of "Wm. Fitzpatrick, DA Onon. Co.").

[9] Rule 3.6(a) provides: "A lawyer who . . . has participated in a criminal or civil matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter." Mr. Fitzpatrick's lengthy statements to the press violated this rule. Rule 4.2(c) provides: "A lawyer who is acting pro se or is represented by counsel in a matter is subject to paragraph (a) [prohibiting contact with a represented party], but may communicate with a represented person . . . provided the lawyer or the lawyer's counsel gives reasonable advance notice to the represented person's counsel that such communications will be taking place." Mr. Fitzpatrick's direct communications with County legislators to influence their votes on the settlement violated this rule; and the County's attorneys have confirmed that Mr. Fitzpatrick did not provide advance notice that he was contacting County legislators concerning the proposed settlement. Rule 8.4(e) provides: "A lawyer . . . shall not . . . engage in conduct that is prejudicial to the administration of justice." Mr. Fitzpatrick's violation of this rule is self-evident.

R|M

cases I've ever had,' he said. 'To give a killer's family money that could be used for police officers or teachers, it makes me sick.'"). These are precisely the kind of extrajudicial statements that are barred by Rule 3.6(a) of the New York Rules of Professional Conduct. The fact they came from the sitting District Attorney, who also prosecuted the case, and espoused what purport to be definitive views of the evidence, is reprehensible.

*Second*, Plaintiff will be seeking sanctions for the violation of the Court's Mandatory Mediation confidentiality rules and bad faith efforts to vexatiously prolong this litigation. Mr. Fitzpatrick violated those rules when he engaged in a campaign to thwart the settlement and disclosed the confidential amount of the settlement to the press. Representations made to us lead us to believe that Mr. Fitzpatrick learned of the settlement amount from a County official or legislator (possibly from information disclosed during the executive session of the County's Ways and Means Committee prior to the February vote). If that is true, the County is subject to sanctions for violating the Court's confidentiality rules and cooperating in Mr. Fitzpatrick wayward campaign to prolong this litigation.

*Third*, Plaintiff will be seeking discovery, relevant to her change of venue and sanctions motions, on the foregoing issues, including, but not limited to, demanding a copy of the eleven-page letter that Mr. Fitzpatrick sent to the press and other related communications. While the individual capacity-claims against Mr. Fitzpatrick were dismissed, his statements as a policy-level official for the County of Onondaga constitute statements by a party-opponent. Additionally, Mr. Fitzpatrick will testify at trial concerning the criminal case that forms the foundation of this action, and his statements expressing disdain for the Second Circuit's decision setting aside that conviction are relevant, at a minimum, for impeachment.

We have prepared this letter so the Court will know in advance of the May 20th conference that Plaintiff will ask the Court to postpone setting a trial date and rather set a briefing schedule for her motions for a change of venue and sanctions.

Respectfully,

Joshua S. Moskovitz
Rob Rickner
RICKNER MOSKOVITZ LLP

Scott Korenbaum
THE LAW OFFICES OF SCOTT A. KORENBAUM

Enc.

cc: All Counsel of Record

# EXHIBIT 1

Start for $1

Family Sharing is here! Subscribe to Premium Access for $5

Advertisement

CRIME & SAFETY

# A 39-year saga: County to pay $1M over man's murder conviction. 'It makes me sick,' DA says

Updated: Feb. 01, 2026, 4:28 p.m. | Published: Jan. 30, 2026, 12:22 p.m.



Hector Rivas died in July 2016 as he awaited a retrial in the murder of his ex-girlfriend Valerie Hill. (Submitted Photo)

By Jon Moss | jmoss@syracuse.com

Syracuse, N.Y. — The family of a former Cazenovia man is in line to get a $1 million settlement from Onondaga County, ending a decades-long legal battle over whether he was wrongfully convicted in a murder from the 1980s.

Hector Rivas had long said the former county medical examiner, Erik Mitchell, fabricated evidence that District Attorney William Fitzpatrick used in convicting him in the March 1987 murder of Rivas' ex-girlfriend, Valerie Hill. Fitzpatrick has said there is a "mountain" of other evidence showing Rivas is guilty.

A local lawyer, Sidney Manes, agreed to help Rivas and in 2015 got a panel of federal judges to order a new trial. Rivas, who spent 23 years in prison, died in 2016 before a trial could be held. Manes died last year.

The civil rights lawsuit against Mitchell and the county was set to go to trial in late February in federal court in Syracuse, with two weeks of testimony expected. A settlement was reached after a mediation session in December that lasted nearly 12 hours, court records show.

**Police Blotter**

THURSDAYS 10 A.M.

Get the latest police blotter from Central NY communities and related crime news every week.

Email

Sign Up

By signing up, you agree to our user agreement (including the class action waiver and arbitration provisions), and privacy policy.

The county Legislature is set to vote on the settlement Tuesday.

Rivas' family was represented by a team of lawyers that included Joshua Moskovitz. He has won large civil rights lawsuits for clients such as the exonerated Central Park Five and the family of Eric Garner. He did not respond to a syracuse.com request for comment.

Fitzpatrick said this week that he stands by the conviction. He sent an 11-page letter to syracuse.com | The Post-Standard defending his work and criticizing the Second Circuit's decision to order a new trial.

"In the pantheon of cases that I've tried, it's one of the strongest circumstantial cases I've ever had," he said. "To give a killer's family money that could be used for police officers or teachers, it makes me sick."

Fitzpatrick said he does not oppose the decision to settle the lawsuit, noting it is a civil matter out of his control. He said he is simply upset by the outcome because of his confidence in the conviction.

Mitchell, the former medical examiner, resigned in the early 1990s as he was being investigated by multiple agencies, including the DA's office, for wrongdoing unrelated to the Rivas case. He was accused of a variety of ethical and professional issues, including removing body parts from the laboratory and boiling bones.

Mitchell kept up his work as a pathologist, performing hundreds of autopsies and testifying in criminal cases in Kansas, North Carolina, Florida and Wisconsin. He has attracted scrutiny there, too.

Mitchell could not be reached for comment.

The Rivas saga stretches from the early days of Fitzpatrick's time as district attorney to what is now his ninth term in office. Lawyers for Fitzpatrick were defending how he obtained one of his earliest convictions after he was first sworn in as the county's top prosecutor in 1992. The DA was ultimately dismissed as a defendant in the lawsuit.

The Hill murder case was considered cold when Fitzpatrick re-opened it after taking office.



Valerie Hill, 28, was found dead in her apartment in Eastwood neighborhood on Monday, March 30, 1987. Provided photograph

Hill, 28, a pediatric nurse, was found dead in her apartment in Syracuse's Eastwood neighborhood, with her bathrobe tie used to strangle her, on Monday, March 30, 1987. She also had been sexually assaulted.

One of the key issues in the case was determining when Hill died.

Lawyers for Rivas have said Mitchell had no scientific basis to conclude Hill died several days earlier, on a Friday evening. Rivas did not have an alibi for several hours that night.

Mitchell has said his estimated time of death was "probably" on the "outside edge of possibility."

Fitzpatrick pointed to other evidence to show Rivas was guilty.

Two bottles of alcohol purchased that Friday night, and a marijuana pipe, were later found at the murder scene, all with Rivas' fingerprints on them. His cigarettes were also in an ashtray in Hill's apartment.

One of Rivas' friends testified that he'd heard him say a week or two after the murder, "Valerie, Valerie. I didn't mean to do it."

A jury convicted Rivas in 1993. He was sentenced to 25 years to life in prison.

While he was in prison, Rivas wrote to Manes to ask for help. The two men had never met.

"He immediately tweaked me," Manes previously told syracuse.com of Rivas' letter, "when he said, 'Let me tell you about my problem with Erik Mitchell.'"

Manes soon started filing records requests under the state Freedom of Information Law and writing dozens of letters to obtain evidence and other documents.

Among the documents that Manes got back were at least five police reports that Rivas claimed Fitzpatrick had not turned over before trial. Two of them could have been used to argue the murder took place when Rivas had an alibi, not at the time Fitzpatrick had claimed.

Manes also discovered that slides Mitchell had apparently taken of portions of Hill's brain to help determine the time of death did not exist. They were actually photographs.

The Second Circuit appeals court has weighed in twice in the case.

A three-judge panel ruled in 2012 that Rivas' original trial lawyer, Richard Calle, provided ineffective assistance of counsel. He did not question the time of death put forward by prosecutors.

The appellate court further ordered a district court judge to consider whether Rivas' conviction should be overturned.

After the judge said a new trial was not warranted, the same three-judge panel overruled him in 2015 and ordered a new trial.

Rivas did not live long enough for a jury to hear the case.

He died in July 2016 at 64 from advanced pancreatic cancer. That was about two months before the new trial was to begin.

A separate lawsuit against New York state related to Rivas' medical care was settled in 2021 for $25,000. He was given protein shakes while losing up to 80 pounds in jail, the lawsuit said.

Manes, Rivas' legal champion, died in January 2025 at 98. His obituary described him as a "self-proclaimed bulldog who specialized in fighting for the underdog."

The legal battle continued until the settlement was reached last month.



Sidney Manes, a lawyer with Bousquet Holstein has accumulated quite a stack of legal records concerning the case of Hector Rivas in 2012. John Berry / The Post-Standard

John Berry John Berry

**Editor's note:** Syracuse.com staff writer Anne Hayes contributed to this report.

## MORE ARTICLES ABOUT HECTOR RIVAS MURDER CASE

**Lawsuit: Dying murder suspect treated with protein shakes in Syracuse jail**

**Imprisoned Caz man wins new murder trial after 23 years, but dies before it begins**

**Lawyer: Caz man can't get a fair murder trial since other suspects are all dead**

**Humor lightens mood during tense prep for Caz man's murder retrial**

**Lawyer: 'Bombshell' 911 call emerges before Caz man's retrial for 1987 murder**

Jon Moss

Jon Moss is a breaking news reporter at Syracuse.com/The Post-Standard. He previously wrote for the Pittsburgh Union Progress and Pittsburgh Post-Gazette, focusing on politics and housing. He graduated in...more

jmoss@syracuse.com

syracuse.com
THE POST-STANDARD

## ▼ About Us

About Us

Photo and Page Reprints

Advertise with us

Jobs at Advance Media New York

Contact Us

Frequently Asked Questions

Accessibility Statement

Submit letter, commentary

## ▼ Subscriptions

syracuse.com

syracuse.com Orange Sports Insider

The Post-Standard

Email Newsletters

## ▼ Already a Subscriber

Manage your Subscription

Place a Vacation Hold

Make a Payment

Delivery Feedback

## ▼ syracuse.com Sections

News

Weather

Business

Sports

High School Sports

Betting

Entertainment

Living

Opinion

Obituaries

Jobs

Autos

Real Estate

Rentals

Classifieds

---

## ▼ Mobile

Tablet Apps

iPhone, Android apps

---

▼ **More on syracuse.com**

Videos

Sitemap

Sponsor Content

Newspapers.com Archive

Sell your car

Post a job

Post a classified ad

Sell/rent your home

▼ **Follow Us**

Twitter

Instagram

Facebook

YouTube

RSS

Privacy Policy | User Agreement | Ad Choices

ADVANCE LOCAL

Use of and/or registration on any portion of this site constitutes acceptance of our User Agreement, (updated 8/1/2024) and acknowledgement of our Privacy Policy, and Your Privacy Choices and Rights (updated 1/1/2026).

© 2026 Advance Local Media LLC. All rights reserved (About Us).
The material on this site may not be reproduced, distributed, transmitted, cached or otherwise used, except with the prior written permission of Advance Local.

Community Rules apply to all content you upload or otherwise submit to this site.

**YouTube's privacy policy** is available here and **YouTube's terms of service** is available here.

Ad Choices

# EXHIBIT 2

Central
*Current*

Donate

# Onondaga County Legislature rejects $1M settlement to end decades-long legal saga

Lawyers for the estate of Hector Rivas, who was accused of killing his ex-girlfriend in 1987, sued the county and alleged DA William Fitzpatrick used faulty evidence to convict Rivas.

**by Laura Robertson** **February 5, 2026**




The old Onondaga County court building is home to the county legislature. Credit: Mike Greenlar | Central Current

Onondaga County legislators on Tuesday rejected a $1 million settlement that would have ended a nearly four-decade legal saga.

County lawyers were prepared to settle with the family of Hector Rivas, a man accused of killing his ex-girlfriend Valerie Hill in 1987, but a majority of the legislature failed to approve the settlement. Rivas had long contended he was convicted in the case with faulty evidence.

Rivas **died in prison** while awaiting a retrial in the case.

The legislature failed to reach a majority for several reasons. The legislature's seven Republicans voted against the settlement. Legislator Ellen Block, a Democrat, was absent for the vote, and Legislator Gregg Eriksen, also a Democrat, had to recuse himself from the vote. Eriksen works for Bousquet Holstein, a law firm whose attorneys have represented Rivas.

"To me, it's a weighty decision," said Minority Leader Brian May of his vote against the settlement. "One of the things we talked about was the fact that it's almost as though — yeah, we're talking about a civil suit settlement — we're deciding guilty or not right in that process."

May said after doing research on the case, the Republican caucus members decided that they could not support the settlement. Legislators voted 8-7 along party lines to approve the settlement, failing to reach a majority of the 17 legislators.

Rob Rickner, a lawyer representing Rivas' estate, said he would look into all their options moving forward.

"There were good reasons for the Ways and Means Committee to recommend this settlement," said Rickner.

Rivas spent two decades imprisoned after initially being convicted in the 1987 murder of his ex-girlfriend before a federal court threw out his conviction and **ordered a retrial** in 2016. Rivas died of pancreatic cancer months before his new trial's scheduled date.

His lawyers accused the county of using evidence fabricated by the medical examiner to prosecute Rivas. Current District Attorney William Fitzpatrick prosecuted Rivas during the first murder trial and still argues the circumstantial evidence against Rivas was strong.

"It's a million dollars that could be going to school kids or police officers or ambulance services or anything," Fitzpatrick said earlier in the week. "Instead it's going to this scumbag's family. It makes me sick."

Legislature Majority Leader Nodesia Hernandez and Legislator Maurice Brown, who sponsored the resolution, both declined to comment on the case, citing legal concerns.

Rivas' lawyers filed the lawsuit in 2019, alleging he had been wrongfully imprisoned for 25 years.

Hill's time of death had become a central issue in the case.

Erik Mitchell, who was the county's examiner when Hill died and estimated her time of death, was being **investigated by Fitzpatrick's office** when Hill was killed. Mitchell resigned as medical examiner because of his mismanagement of the office, the New York Times reported in 1993.

Mitchell **initially** concluded Hill died at a time when Rivas had an alibi, Rivas' lawyers alleged in the lawsuit. He later concluded Hill could have died a day earlier, a time when Rivas did not have an alibi. Rivas' lawyers brought in expert testimony that questioned Mitchell's findings about when Hill died.

Mitchell admitted that his second estimation of the time of Hill's death was "probably" on the "outside edge of possibility," Judge Brenda Sannes wrote in a September 2025 ruling.

Sannes wrote that despite evidence that Fitzpatrick knew that during the Rivas trial Mitchell was also being investigated for misconduct by two separate agencies, he did not disclose the information to the jury.

Fitzpatrick maintained in an interview with Central Current that he would have prosecuted Rivas regardless of the date Mitchell estimated Hill died.

Sannes wrote that the circumstantial evidence Fitzpatrick used to convict Rivas in 1993 "would have been essentially useless" to prosecuting Rivas without Mitchell's testimony that Hill could have died at a time when Rivas did not have an alibi.

Rivas' lawyers initially sued Fitzpatrick, however Sannes removed the district attorney as a defendant because he has prosecutorial immunity, she wrote.

Other similar cases in which a legislative body has rejected a settlement agreement have then gone to trial. The Syracuse Common Council last year rejected a settlement agreement with the **family of a man killed by a Syracuse police officer.**

County Attorney Robert Durr did not immediately return a call about the case.

READ MORE OF CENTRAL CURRENT'S COVERAGE




**Sean Kirst: Fall leaves. Winter longs. On bridges, downtown messages rust away.**

Contemplating the uncertain future of railroad bridge murals created 17 years ago in Syracuse by famed artist Steve Powers.

by Sean Kirst May 11, 2026




### Is Central New York becoming a blue bunker for Congressional Democrats?

National and local experts expect New York's 22nd Congressional District to stay blue. Candidates say different.

by Patrick McCarthy May 8, 2026




**Backed into a corner, Onondaga County Legislature Republicans offer a trade on affordable housing. No deal, Dems say**

Legislature Democrats replaced half of OCIDA's board. Republicans offered $5M toward affordable housing to stop them.

by Laura Robertson May 5, 2026



**Onondaga County Legislature unanimously passes law requiring more disclosure for aquarium donations**

The law would require county leadership to disclose names of donors who gift more than $10,000 to fund the aquarium to the legislature's chair.

by Laura Robertson May 5, 2026




### Central Current honored at Syracuse Press Club Awards

Central Current received nine awards including Best News Website, Best Photo Essay, and Best Print/Digital Human Interest Feature.

by Maximilian Eyle May 5, 2026

© 2026 Copyright Central Current, Inc
Powered by Newspack

# EXHIBIT 3

Advertisement

Close

CENTRAL NY NEWS

# Onondaga County legislators reject $1 million settlement over 1987 murder case

Published: Feb. 03, 2026, 5:42 p.m.




Hector Rivas died in July 2016 as he awaited a retrial in the murder of his ex-girlfriend Valerie Hill. (Submitted Photo)

Family Sharing is here! Subscribe to Premium Access for $5

By Tim Knauss | tknauss@syracuse.com

Syracuse, N.Y. – In a surprisingly partisan vote, Onondaga County legislators on Tuesday failed to approve a $1 million settlement that would have ended a decades-long legal battle over a 1987 murder case.

Only eight legislators voted in favor of settling a civil rights lawsuit brought by the estate of Hector Rivas, who died in 2016 while awaiting a new trial over his conviction for the murder of his ex-girlfriend, Valerie Hill.

Rivas contended that he was wrongly convicted based on phony evidence provided by the county's medical examiner at the time.

Approval of the settlement required support from a majority of the 17 legislators -- at least nine votes. In a party-line vote, eight Democrats supported the settlement and all seven Republicans voted against it.

Two Democratic legislators were not present. Legislator Ellen Block, D-Salina, was absent from the session, and Legislator Gregg Eriksen, D-Skaneateles, left the chamber for the vote because his law firm had once done work for Rivas.

Legislature Chair Nicole Watts, D-Syracuse, said she was surprised when Republicans voted against the deal.

"I was not given a heads up in advance. There was nothing in the discussion prior that led me to believe that that was where that was headed," she said.

Members of the Ways and Means Committee last week discussed the proposed settlement behind closed doors with county attorneys. Minority Leader Brian May, R-Lysander, said that brief discussion did not provide enough detail to settle such an old and complex case.

"I can't get behind settling for a million dollars," May said. "I need to know more."

Leaving aside the large dollar amount, May said he was not persuaded that the county should settle "on principle."

District Attorney William Fitzpatrick, who prosecuted Rivas early in his career, has said he stands by the conviction. He criticized the federal appeals court for granting Rivas a new trial.

"In the pantheon of cases that I've tried, it's one of the strongest circumstantial cases I've ever had," Fitzpatrick said. "To give a killer's family money that could be used for police officers or teachers, it makes me sick."

Asked whether the Republican Fitzpatrick's comments influenced GOP legislators, May did not answer directly but said legislators did their own research.

"There were a lot of comments on the case. When people see a million dollars, there's all kinds of comments that come along,'' May said. "We did our homework, and that's where we landed."

Watts said Democrats were prepared to follow the advice of the county attorney's office.

Rivas had long said the former county medical examiner, Erik Mitchell, fabricated evidence that Fitzpatrick used in convicting him. Fitzpatrick has said there is a "mountain" of other evidence showing Rivas is guilty.

A panel of federal judges in 2015 ordered a new trial. But Rivas, who spent 23 years in prison, died in 2016 before a trial could be held.

Rivas' family brought a federal lawsuit in 2019 against Mitchell and the county. It was set to go to trial later this month in federal court, but the proposed $1 million settlement was reached after 12 hours of mediation in December, court records show.

It's not clear how the case will proceed now. County attorneys could not immediately be reached for comment.



Stories by **Tim Knauss**

**New York extends billions in subsidies for nuclear plants in Upstate NY**

**Last-minute lawsuit aims to block Micron chip fabs on environmental grounds**

**Builders cheer Hochul's 'sincere interest' in speeding up housing approvals**

Advertisement

**Are you buying, selling, or renting?**

Peruse a wide range of listings and properties in SY




Advance Media New York

*Staff writer Tim Knauss can be reached by email or at 315-470-3023.*



Tim Knauss

Tim Knauss is a watchdog reporter on the public affairs team at Syracuse.com, with four decades of experience covering Central New York. Knauss has written about a variety of subjects recently including unfair...more

tknauss@syracuse.com

## Around the Web

### Neurologists Explain: 3 Common Foods Now Tied To Dementia Concerns

**Neuroscience Institute** | Sponsored

Watch Now

### A Plastic Surgeon Asked Who Did Her Face. Then Went Quiet

**Olavita** | Sponsored

### These 250th Anniversary Edition Whisky Bottles Are Selling Out Fast in New York

Perfect Gift for Patriots & Collectors.

**Olygee** | Sponsored

Learn More

### Neurologists Beg: Stop Taking These 3 Common Foods Now Tied To Dementia

**Neuroscience Institute** | Sponsored

Watch Now

### 5 Second Trick Eliminates Mice in Your Garage

**Vamoose** | Sponsored

### Severe Ringing in Ears is Being Linked to a Common Food. Cut it Out Now

**Center For Neurologists** | Sponsored
Click Here

**New York Student Sentenced To Year In Dubai Prison After Touching Airport Security Guard During Layover - Blavity**

**Blavity.com** | Sponsored

**Man Who Called the 2008 Crash Just Named His #1 AI Stock**

Porter Stansberry predicted Fannie Mae and GM's collapse. Now he says one company controls the entire AI ecosystem.

**The Margin Report** | Sponsored
Learn More

**The AI Startup Still Priced at $0.85**

They're Building A Portfolio Of AI-Enhanced Profit Machines. Invest In RAD Intel.

**Entrepreneur** | Sponsored
Learn More

**Seniors Above 55 Years of Age Can Now Fly Business Class For The Price of Economy Using This**

**Smart Travel Tips** | Sponsored
Learn More

**$25 Patch Is Going Viral After Shocking Weight Loss Photos**

**BetterLiving** | Sponsored

**Tinnitus is Just a Symptom – Here Lies The Real Cause Hidden**

**Center For Neurologists** | Sponsored

Click Here

**Costco Shoppers Say This $35 Find Is the "Facelift" in a Bottle**

**Olavita** | Sponsored

**Cicero teen stabbed**

syracuse.com

**CNY woman burned saving snowblower; neighbors rush to help her, husband**

syracuse.com

syracuse.com
THE POST-STANDARD

▼ **About Us**

About Us

Photo and Page Reprints

Advertise with us

Jobs at Advance Media New York

Contact Us

Frequently Asked Questions

Accessibility Statement

Submit letter, commentary

---

▼ **Subscriptions**

syracuse.com

syracuse.com Orange Sports Insider

The Post-Standard

Email Newsletters

---

▼ **Already a Subscriber**

Manage your Subscription

Place a Vacation Hold

Make a Payment

Delivery Feedback

---

## ▼ syracuse.com Sections

News

Weather

Business

Sports

High School Sports

Betting

Entertainment

Living

Opinion

Obituaries

Jobs

Autos

Real Estate

Rentals

Classifieds

---

## ▼ Mobile

Tablet Apps

iPhone, Android apps

---

### ▼ More on syracuse.com

Videos

Sitemap

Sponsor Content

Newspapers.com Archive

Sell your car

Post a job

Post a classified ad

Sell/rent your home

### ▼ Follow Us

Twitter

Instagram

Facebook

YouTube

RSS

Privacy Policy | User Agreement | Ad Choices

ADVANCE LOCAL

Use of and/or registration on any portion of this site constitutes acceptance of our User Agreement, (updated 8/1/2024) and acknowledgement of our Privacy Policy, and Your Privacy Choices and Rights (updated 1/1/2026).

© 2026 Advance Local Media LLC. All rights reserved (About Us).
The material on this site may not be reproduced, distributed, transmitted, cached or otherwise used, except with the prior written permission of Advance Local.

Community Rules apply to all content you upload or otherwise submit to this site.

**YouTube's privacy policy** is available here and **YouTube's terms of service** is available here.

Ad Choices