# Rickner | Moskovitz

Joshua S. Moskovitz, Principal │ (212) 300-6506 │ josh@rmcivilrights.com

July 16, 2026

<u>BY ECF</u>

Hon. Brenda K. Sannes
United States District Court
Northern District of New York
100 S. Clinton Street
Syracuse, New York 13261

Re:    *Rivas v. Onondaga County* et al., No. 19 CV 844 (BKS) (CBF)

Dear Judge Sannes,

We represent Plaintiff Flora Rivas, Executor of the Estate of Hector Rivas. We write to ask that the Court (1) compel William Fitzpatrick to respond in full to Plaintiff's subpoena regarding Mr. Fitzpatrick's efforts, after the claims against him were dismissed, to undermine the remaining parties' settlement and force the case to trial, (2) compel Onondaga County to respond to Plaintiff's limited discovery requests on the same topic, and (3) extend Plaintiff's deadline to file her anticipated motions for sanctions and to change venue.

As detailed in our May 18, 2026 letter (Dkt. 198), after the individual capacity claims against Mr. Fitzpatrick were dismissed from this action based on prosecutorial immunity, the remaining parties reached a settlement through the Court's Mandatory Mediation Program. That process is subject to strict confidentiality under the Court's General Order 47. The settlement, approved by the County's attorneys, required legislative approval – typically a ministerial step. But Mr. Fitzpatrick campaigned to have the settlement rejected using confidential information he obtained surreptitiously in violation of General Order 47.

Mr. Fitzpatrick personally contacted legislators and the press and disclosed confidential information about the settlement. The County's attorneys maintained that Mr. Fitzpatrick, in doing so, acted as private citizen and his conduct was therefore protected free speech. However (apparently realizing he may face personal liability for his actions) Mr. Fitzpatrick has recently claimed that in seeking to disrupt the settlement he acted in his *official capacity* as the District Attorney. Of course, the County's attorneys are correct on this point: district attorneys have no powers nor duty concerning civil litigation against a county, and Mr. Fitzpatrick took these actions in his individual capacity to serve his own ends.

As set forth in our prior letter and discussed at the last conference, Plaintiff will move the Court to address this malfeasance. *First*, Plaintiff will seek to have the Court sanction the

party responsible for leaking confidential mediation information to Mr. Fitzpatrick, including the settlement amount itself, and sanction Mr. Fitzpatrick for providing that information to the press. The settlement amount in particular pressured lawmakers into voting against the settlement. *Second*, Plaintiff will move *in limine* for an order allowing Plaintiff's counsel to cross-examine Mr. Fitzpatrick regarding his personally-vindictive campaign to undermine the settlement, which included Mr. Fitzpatrick complaining that the settlement money would be, "going to this scumbag's family. It makes me sick." It is apparent that the defense plans on trying to re-convict Mr. Rivas rather than defending the constitutional violations by Mr. Fitzpatrick in his official capacity. *And third*, Plaintiff will seek to have this action transferred to another venue. The top elected official responsible for personally prosecuting the underlying criminal case spoke to the press (in what he now claims was his *official capacity*) in a deliberate attempt to sway public opinion about this lawsuit, which has poisoned the jury pool.

To support these motions, Plaintiff has sought limited discovery to answer basic questions about how Mr. Fitzpatrick knew the confidential terms of the mediation process, and what he told the press and lawmakers. None of this discovery could have been obtained in discovery, because discovery closed long before any of this happened. And there is no significant burden, given the limited nature of the requested disclosure. But the County and Mr. Fitzpatrick have chosen to fight and stonewall our efforts, forcing this motion to compel.

### I.    Compel Mr. Fitzpatrick to Comply with the Subpoena Served on Him Personally

On June 18, 2026, Plaintiff served a subpoena on Mr. Fitzpatrick (attached here as Exhibit 1). The subpoena covered topics related to Mr. Fitzpatrick's disclosure of the confidential settlement amount to the media in advance of the February legislative session and Mr. Fitzpatrick's efforts to communicate with County legislators concerning the settlement. The subpoena was addressed to "William Fitzpatrick" and was not limited to documents Mr. Fitzpatrick created in his "official capacity."[1]

On July 2, 2026, we received an email and letter from Bradley W. Oastler, a Senior Assistant District Attorney in the Onondaga County District Attorney's Office. The letter (attached here as Exhibit 2), purports to provide a response to the subpoena from the Onondaga County District Attorney's Office. *See* Ex. 2 ("*Our Office* is in receipt of a subpoena dated June 17, 2026 . . . . *Our Office* responds with the following: . . . ." (emphasis added)). We responded to Mr. Oastler that "[o]ur subpoena was directed to Mr. Fitzpatrick personally," and asked, "[d]o you represent him in this matter?" Mr. Oastler responded: "*I do not*; Mr. Julian is still the man in charge.  DA Fitzpatrick asked that I assist in compiling the

---

[1] The subpoena was addressed to "William Fitzpatrick" as opposed to the "Onondaga County District Attorney" or "Onondaga County District Attorney's Office."



response given that it involved matters within the duties of our office/his elected position. The responses are from DA Fitzpatrick himself." (emphasis added). We responded: "We require a response to our subpoena from Mr. Fitzpatrick."

On July 6, 2026, Mr. Oastler emailed an "*amended* response" (attached here as Exhibit 3). The "amended response" is verbatim Mr. Oastler's initial response but is signed by Mr. Fitzpatrick. That response is deficient for at least the following reasons:

- Paragraph 3 of the subpoena demanded the production of "any communications between Fitzpatrick and the press concerning the settlement." In response, Mr. Fitzpatrick acknowledged that he sent a text message and email to Jon Moss of The Post-Standard. Yet, those communications were not produced, nor were any other communications between Mr. Fitzpatrick and the press concerning the settlement.[2]

- Paragraph 4 of the subpoena demanded the production of "all records of, including telephone call logs, concerning communications between Fitzpatrick and any of the press concerning the settlement." In response, Mr. Fitzpatrick claimed, "[n]one exist." Yet, in the very next response, Mr. Fitzpatrick confirmed that on January 29, 2026, Mr. Moss called Mr. Fitzpatrick concerning the settlement. Mr. Fitzpatrick later supplied a screenshot of certain text messages between himself and Mr. Moss – so his response that "none exist" was false. Those text messages appear to be on a cell phone. Clearly there are telephone call logs available for calls made from a cell phone, whether that is on the phone itself or records available from the cell phone provider. Yet, those records have not been disclosed.

- Paragraph 8 of the subpoena demanded the production of "any documents that Fitzpatrick sent any member of the Onondaga County Legislature concerning the settlement." In response, Mr. Fitzpatrick acknowledged, "[o]n February 2, 2026, the above memo was emailed to Brian May, and then was provided in person to Nicole Watts on February 4, 2026." Yet, no such email was produced. Mr. Oastler later produced an email to Mr. May, but it remains unclear whether more responsive emails, or text messages, exist.

---

[2] Jon Moss and The Post-Standard were not the only press outlets that Mr. Fitzpatrick contacted. An article by Laura Robertson appeared online in *Central Current* entitled, "Onondaga County Legislature rejects $1M settlement to end decades-long legal saga," which quotes Mr. Fitzpatrick saying, "'It's a million dollars that could be going to school kids or police officers or ambulance services or anything . . . . Instead it's going to this scumbag's family. It makes me sick." *See* https://centralcurrent.org/onondaga-county-legislature-rejects-1m-settlement-to-end-decades-long-legal-saga/.



- Paragraph 10 of the subpoena demanded the production of "all records of, including telephone call logs, concerning communications between Fitzpatrick and any member of the Onondaga County Legislature concerning the settlement or the mediation." In response, Mr. Fitzpatrick produced nothing, not even the email sent to Mr. May. Later, Mr. Oastler produced an email sent to Mr. May on February 2. It remains unclear whether more responsive emails or text messages exist.

By email dated July 9, 2026, we advised Mr. Oastler: "We need to confer with whomever is representing Mr. Fitzpatrick about his subpoena responses, which are clearly deficient," and described the deficiencies set forth above. In response, Mr. Oastler wrote:

> I think I misunderstood your earlier email, as I am not well-voiced on the federal action or the nature of the parties and claims. Mr. Julian represented the DA in connection with that action. Your subpoena appears to be directed to the DA in his capacity as an elected official, and it seeks items that are wholly connected to his responsibilities and actions as such. I have thus been tasked to respond to it.
>
> If you have particular questions regarding the response, then it appears that I would be the one to field such questions.

On July 9, 2026, we responded that the "subpoena was not addressed to Mr. Fitzpatrick in his official capacity and it is not limited to actions he may have taken as an elected official." Because we needed to confer further with Mr. Fitzpatrick's legal representative, we asked: "[D]o you represent Mr. Fitzpatrick in connection with this subpoena? You may not be well-versed in the federal action, but we need a clear answer to that question." On July 10, 2026, Mr. Oastler responded without confirming, or denying, that he represents Mr. Fitzpatrick. Mr. Oastler supplied two emails sent by Mr. Fitzpatrick's administrative assistant and attached a screenshot of certain texts between Mr. Fitzpatrick and Mr. Moss, with certain messages redacted (and without supplying a privilege log).

In sum, Mr. Fitzpatrick has failed to fully respond to the subpoena served on him. His effort to elude the subpoena is troubling, as is his decision to enlist an attorney in his office to formulate a response to a subpoena concerning his personal actions. Nothing in the Onondaga County Charter nor New York County Law Article 18 imbues a district attorney with power relative to a civil lawsuit against the County or the County's decision to resolve that lawsuit. Mr. Fitzpatrick acted out of purely personal motivation. The only attorney who contacted us about the subpoena refused to say whether he represents Mr. Fitzpatrick on this issue, and no attorney for the County responded to our request to confer about Mr. Fitzpatrick's deficient response to the subpoena. Accordingly, we have no choice but to seek an order of contempt directing Mr. Fitzpatrick to fully respond to the subpoena.



## II.    Onondaga County Should Be Ordered to Respond to Plaintiff's Limited Discovery Requests Concerning the Unfulfilled Settlement

As Plaintiff previewed at the last conference, we served limited discovery requests on the County on June 17, 2026 to uncover who leaked confidential mediation information to Mr. Fitzpatrick and concerning Mr. Fitpatrick's misguided efforts to disrupt the settlement and poison the jury pool. The County refused to respond to those requests. In a meet and confer, the County's attorneys stated that it will not respond for the single reason that there has not been a formal order reopening discovery. The County's position was that Plaintiff needed to make a motion to reopen discovery by July 17, 2026. But that position makes little sense. Plaintiff needs this discovery to support the motions that the Court directed *be filed by July 17*. The County's position is merely a delay tactic meant to undermine the motions Plaintiff has previewed by limiting Plaintiff's access to evidence that supports the motions. For his part, Mr. Fitzpatrick has not moved to. quash the subpoena served on him by claiming discovery must be reopened. But to the extent necessary, Plaintiff moves to formally reopen discovery for the limited purpose of obtaining responses to the requests served on the County and subpoenaed from Mr. Fitzpatrick.

There is good cause to grant Plaintiff's request. "Courts apply a six-part test to determine whether to reopen discovery:  (1) whether trial is imminent; (2) whether the request is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court; (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court; and (6) the likelihood that the discovery will lead to relevant evidence." *Fredericks v. Borden*, No. 9:17-CV-00015 (BKS/DJS), 2024 WL 4534079, at *14 (N.D.N.Y. Oct. 21, 2024) (quotation omitted). These factors all weigh strongly in Plaintiff's favor. Trial is imminent, but the discovery sought is limited and will not delay trial. The County may object but given the limited nature of the discovery sought there is no good cause for an objection and the County will not be prejudiced. (As noted below, the County has engaged, on its own behalf, in a wholesale reopening of discovery.) Plaintiff could not have sought this discovery earlier because the events at issue had not happened yet and were entirely unforeseen; according to the County's own attorneys, these events are "unprecedented." *See* Dkt. 198 at 3.

The discovery requested is narrowly tailored to the motions Plaintiff has already previewed for the County, and important to uncovering which party is responsible for violating section 3. 8 of the Court's General Order 47, which provides:

> No participant in the mediation process or any portion thereof may communicate confidential information acquired during mediation without the consent of the disclosing party. . . . All written and oral communications



made in connection with or during the mediation session, any positions taken and any views of the merits of the case formed by any participant, including parties, counsel and the mediator, are privileged and confidential.

By disclosing confidential information about the mediation process to Mr. Fitzpatrick, a party to the mediation violated this rule. Mr. Fitzpatrick's intentions concerning this case and any settlement were plain to all involved. Disclosing confidential information to him about the settlement – *particularly* the proposed amount – was equivalent to handing a can of spray paint to a vandal. The press reports confirm that Mr. Fitzpatrick's disclosed the amount of the settlement to the press in order to, and had the effect of, influencing county legislators to vote against the settlement: "Asked whether the Republican Fitzpatrick's comments influenced GOP legislators, [Minority Leader Brian] May did not answer directly but said legislators did their own research. 'There were a lot of comments on the case. When people see a million dollars, there's all kinds of comments that come along.'"[3]

In order to protect this Court's mediation process from similar skullduggery in the future, it is important to find out how Mr. Fitzpatrick obtained confidential information from the mediation. The fact that the County and Mr. Fitzpatrick have resisted disclosing any evidence that would reveal this fact strongly suggests a consciousness of guilt.

Finally, it is worth noting that the County's opposition to Plaintiff's requested discovery on the grounds that "discovery is closed" is deeply hypocritical because the County has engaged in a wholesale reopening of discovery on its own behalf. The County has recently produced more than **3,000 pages of documents** regarding the underlying prosecution of Hector Rivas, which the County never produced before – neither in response to Plaintiff's requests for those documents *nor* pursuant to the County's Rule 26(a)(1) obligations. The County has recently served **10 subpoenas** for records that were available during discovery in this case but the County had not sought before. (By separate letter, Plaintiff will be requesting a conference to quash these subpoenas and request a remedy for the County's blatant violation of its discovery obligations.) The County has also requested the deposition of Flora Rivas, who was identified in Plaintiff's initial Rule 26(a)(1) disclosures served in *2020*. That said, Plaintiff's narrow requests for newly created evidence are entirely reasonable; producing thousands of pages of documents requested more than five years ago, serving 10 subpoenas for documents that are four decades old, and seeking to depose a witness who was identified more than six years ago is not.

---

[3] Tim Knauss, *The Post-Standard* "Onondaga County legislators reject $1 million settlement over 1987 murder case" (Feb. 3, 2026), *available at* https://www.syracuse.com/news/2026/02/onondaga-county-legislators-reject-1-million-settlement-over-1987-murder-case.html.



### III.    Extension of the Deadline for Plaintiff's Anticipated Motions

The undisclosed discovery addressed above is critical for Plaintiff's anticipated motions, which are present due to be filed by July 17, 2026. *See* Text Minute Entry for May 20, 2026 Telephone Conference. Accordingly, Plaintiff requests that this deadline be adjourned until after the Court rules on this motion. Plaintiff would request that the deadline be reset to a date at least two weeks beyond any deadline set for the production of the foregoing documents.

We thank the Court for considering this request.

Respectfully,

Joshua S. Moskovitz
Rob Rickner

Scott A. Korenbaum
THE LAW OFFICE OF SCOTT A. KORENBAUM

Enc.

cc:    All Counsel of Record