UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

FLOR RIVAS, Executor of the Estate of Hector Rivas, also known as FLORA RIVAS, formerly known as SIDNEY MANES, Administrator of the Estate of Hector Rivas,

Plaintiff,

-against-

ONONDAGA COUNTY and DR. ERIK MITCHELL,

Defendants.

**DEFENDANT DR. ERIK MITCHELL'S TRIAL BRIEF**

**Civil Action No. 5:19-cv-844 (BKS/CBF)**

**Hon. Brenda K. Sannes, Chief United States District Judge**

## I. MITCHELL DID NOT FABRICATE EVIDENCE

Dr. Erik Mitchell did not fabricate evidence nor was he reckless in his conduct.

Based on this Court's decision he is granted absolute immunity with regard to his testimony before the Grand Jury and at Trial.

We are therefore, left to defend the issue of whether his care and conduct in performing the autopsy and in offering opinions on March 30, 1987 was outside of the standard of care and as a consequence an intentional fabrication or a reckless opinion regarding the range of the time of death .

On March 30, 1987 Dr. Mitchell opined:

- The Decedent was in full rigor with fixed anterior liver (M 22). (Attached)
- Her body was on a cool floor above a cool basement which he experienced in conducting his investigation.

- The temperature of the house was measured to be 62 to 64 degrees. Mitchell measured the temperature in the basement to determine what the temperature of the floor was (M 36) Syracuse Police Record (attached).
- The Decedent was last known to be alive on Friday, March 27 and the last person to see her alive on that date was her father (after years of investigation her father remains today to be the last person to see her alive). Medical Examiner's Record (Dkt. No.141-5, pg. 4)
- The brain on autopsy showed it was mildly softened secondary to autolytic changes when it was removed. Medical Examiner's Record (Dkt. No. 141-5, pg. 12)

In the medical examiner's record on March 30, 1987 Dr. Mitchell dictated, "appears as though deced was there approx. 2-3 days". When he dictated this he did not know:

- Hector Rivas was a suspect.
- Hector Rivas did not have a alibi for Friday night, March 27, 1987.

It was dictated and typed on March 30, 1987 after having completed the autopsy and dated March 31, 1987.

As the Court notes, it is "His conclusion that Hill could have died as early as the evening of Friday, March 27, 1987" is the evidence the Plaintiff asserts Mitchell fabricated. (Dkt. 165 pg. 5)

Peter Tynan, a police officer at the time, was told by Mitchell on March 30, 1987 that the Decedent had been dead at least 2 days before her body had been found. (Tynan depo pg. 21 – attached)

That was the extent of Dr. Mitchell's investigatory involvement in this case.

Dr. Mitchell signed a death certificate in which he did not give a date or time of death.

When the Decedent's brain was sectioned by a neuropathologist, cavities were found in the brain that Mitchell attributed to decomposition "of bodies that are further along from the time of death". (Mitchell deposition p. 72)

The foregoing are medical opinions offered by Mitchell supported by his testimony and that of expert testimony.

Dr. Mary Jumbelic, who served as the Chief Medical Examiner of Onondaga County from 1998 – 2009 and prior to that served as Deputy Chief from 1995 to January 1998 and who served as a clinical assistant professor and then a clinical associate professor in the State University of New York Department of Pathology from 1996 to 2009, identified that:

- Mitchell's opinion as to the window of time of death having been 2-3 days was reached consistent with and within the standard of practice. (para. 3)
- Forensic pathologists used multiple observations to estimate the time of death including "rigor mortis, livor mortis, body cooling and gastric contents". These would have been the parameters in 1987. The time of death falls between "when the Decedent was last seen alive and when they were found dead." (para. 2) She further affirmed that while time of death estimations would not exclusively be based on history, it is a integral part of the scientific process which along with his examination of the scene, the condition of the brain and opinions based on the slides, the autopsy and the investigation complied with the consensus standards for pathologists. (DK# 141-29)

Mitchell did not fabricate that window. The facts available to him on March 31, 1987 were that the father had not heard from the Decedent since Friday and he was the last person to see her alive – as noted above, an important marker in determining range of time of death. Decades later we do not know what other details Mitchell learned regarding the significance of this fact on March

30, 1987 to wit were there others who had last seen her alive or was there other circumstantial evidence pointing to her last having been alive on Friday. Dr. Mitchell opined the window was 2-3 days based on the most significant marker, when she was last seen alive. There is no testimony or opinion by Dr. Spitz that Dr. Mitchell considering the history of when she was last seen alive in reaching the time of death was reckless or fabrication.

## II. THE COURT MUST PROTECT MITCHELL'S ABSOLUTE TESTIMONIAL IMMUNITY AND PRECLUDE THE JURY HEARING HIS CRIMINAL TRIAL TESTIMONY

At page 21-22 of the Summary Judgment decision, the Court states:

- "Mitchell first argues he is entitled to absolute immunity for his Grand Jury testimony . . . and Trial."
- Plaintiff responds that the fabrication of evidence claim does not arise from Mitchell's testimony, but rather "from the forensic evidence Mitchell fabricated and provided to investigators" . . .
- Plaintiff does not purport to rely on Mitchell's Grand Jury or Trial testimony and the Court will not consider such evidence in its analysis. (citation omitted) (Dkt 165 pg. 21-22)

The jury should not be permitted to consider the Grand Jury or Criminal Trial testimony either. The Court is asked to preclude the reading of that testimony to the Trial jury. It is conceded to be unnecessary by the Plaintiff. Its introduction in <u>any</u> <u>form</u> with <u>any</u> instruction by the Court will be prejudicial to Mitchell – a prejudice that cannot be remedied by an instruction.

## III. POST MARCH 1993 EVIDENCE/ARTICLES ARE IRRELEVANT

At this juncture the Defendant is unaware of exactly what evidence the Plaintiff intends to introduce about the subsequent investigation of Mitchell by the New York State Health Department or Fitzpatrick. It is irrelevant and Defendant reserves the right to object.

If the issue is raised regarding Mitchell subsequently using unproven science in his career subsequent to March of 1993, the Court is advised the Plaintiff will seek to provide rebuttal testimony regarding those scientific opinions. The offering of that issue if permitted by the Court potentially will lead to a trial of collateral, unrelated scientific issues as we respectfully assert that Dr. Mitchell had a reasonable basis for his opinions, which were misunderstood and mischaracterized.

## IV. PETER TYNAN NOTE

Attached to this Brief is a undated note in Peter Tynan's handwriting (Bates stamp 008955 - attached). The Court should not receive into evidence the attached note as it lacks a foundation as to when, where and who it RECORDS was the basis of discussion.

Peter Tynan and Mitchell do not recollect this document. Tynan acknowledges it's his writing. (Tynan depo p. 28)

As to any discussion with Mitchell to form the foundation for the admission of the note he states:

> "I don't remember talking to him but, I may have. I'm not saying it didn't I mean." (Tynan depo p. 29)

He further testified as follows regarding the note:

> "It could have come from Mitchell, it could have come from somebody else in the ME's office." (Tynan depo p. 29)

> "It means whatever the limits of time of death would be further out, which could – in my mind it means that any time to when she last talked to somebody. It pushes the time of death out." (Tynan depo p. 31)

Mitchell testified he did not recall having a conversation with Tynan regarding the findings in his autopsy. (Mitchell depo p. 94)

Based on the foregoing, there is no foundational basis for this note to be a admission by Mitchell or a reflection by Mitchell of his opinion. He did not author it. In fact, Tynan testified if he talked with Mitchell he would have dictated a report for the file. (Tynan depo p. 29). There is no such report.

The Court also should be aware further that Mr. Tynan testified as follows:

> Q. During the reinvestigation phase, 1992, do you remember Erik Mitchell coming to any new conclusions?
>
> A. No. I remember that - - that - - like I said before, that he said that she was dead at least two days and we knew that - - that she was - - she was - - she wasn't seen after Friday. That would make it three days. So, do I remember Erik Mitchell saying change of something? Not particularly. No.
>
> Q. Do you remember Erik Mitchell saying that he now had more evidence that it was more likely to be three days rather than two days?
>
> A. No.

The note should not be received in evidence as it locks a foundation as to whether Tynan is referencing a conversation directly with Mitchell.

## V. THE VOLUNTARY AFFIDAVIT THAT WAS PROVIDED BY POLICE OFFICER TIMOTHY PHINNEY IS HEARSAY

There are no exceptions that it falls within. It is not an admission by a party opponent pursuant to Rule 801(d)(2). Under the rule the statement that is offered against the party and is either the party's own statement which it is not in this case or the statement of the party which has manifested an adoption or belief in its truths or a statement by a person authorized by the party to make a statement concerning the subject or a statement by the party's agent or servant or a statement by a co-conspirator. This statement does not quote Dr. Mitchell nor does it purport to

have been uttered by him. Indeed this statement recites that: "The Onondaga County Medical Examiner's Office, Dr. Mitchell's preliminary estimate on the time of death of the victim Valerie Hill was sometime Saturday, the 28th of March afternoon and Sunday morning on the 29th of March. This affidavit was given by Phinney on March 30th. It does not provide the statement by Randall Hill that his daughter was last seen alive on Friday nor any information or data with regard to that. It was not a statement that was adopted by Mitchell at any time.

Dated: November 4, 2026

Respectfully submitted,

ROBERT F. JULIAN, P.C.

Robert F. Julian, Esq.
*Attorneys for Defendant Dr. Erik Mitchell*
Office & Post Office Address
2037 Genesee Street
Utica, New York 13501
Robert@rfjulian.com
(315) 797-5610

I'm asking if you understanding generally what its purpose is.

A. I believe so.

Q. What is your general understanding of the purpose of credentialing?

A. It's to establish the satisfaction of requirements of employment.

Q. To determine whether the applicant is qualified to perform the particular medical work that he's seeking the privileges to perform; would that be fair?

A. Yes.

Q. And can you generally tell us how one would go about establishing qualifications?

A. By supplying requested documentation.

Q. I'm sorry. Say it again.

A. By supplying requested documentation.

Q. For instance, documentation of a medical degree?

A. Yes.

Q. Documentation of a medical license?

A. Yes.

Q. Documentation of references?

A. I would -- that's a presumption, yes.

Q. You've hired doctors, correct? You've

Lab # 107302 01.21.2022 11:05 Complaint # 87-37611

Offense: Homicide Date: 30 Mar 87 Location: 248 Hickok Ave.
Victim(s): Valeri Hill
Lab Notified By: CID Sgt. Lorenz Time: 1320 Arrival Time: 1345
Person(s) Present: Chief Hunt, D/C Galvin, D/C Darby, Capt. O'Donnell, ET B. Murphy, PO. Kiggins
Lt. Mumford, ET Borowicz.
Lab Personnel: Capt. Wheeler, Sgt. Buske, M.E. Staff: Dr. Mitchell ADA: DA Hennessy
Inv's Erwin, Kimak, Pratt ADA Duncan

1) PHOTOGRAPHS: Color X Black & White X Slides 4x5 Aerial
Photographers: Erwin, Pratt, Murphy
Cameras: 120 mm & 35 mm

2) SKETCH: (Room, Major Furnishings, Location of Body, Physical Evidence, Direction)
Sketcher: J. Kimak Measurer: G. Pratt & ET Murphy

3) SCENE: Temperature (interior/exterior): 62°-64° /
Lighting: No Light On
Weather Conditions: Cloudy-Mild-Slight Rain
Doors/Windows: Front Door locked and sealed
Electrical Appliances: Electric blanket on in bedroom 8
Telephone: On desk in diningroom
Medications:
Body Description: W-F-lying face down in front living room, blue bathrobe over top of body (waist up), bathrobe sash around deck, wrap around to bathrobe around
Weapon(s): victims neck.

Vehicle(s): 2 Dr., Wht Ford Tempo-
mileage-14539-locked and parked in driveway
Other Unusual Conditions: Red blanket was placed over lower portion of body by personnel first on scene, key to back door missing from keyring that was found in purse.

4) SEARCH:
Personnel: Capt. Wheeler, Sgt. Buske, Inv's Kimak, ERwin, Pratt, ET Murphy
Method: Zone Area: livingroom, diningroom, bedrooms, kitchen, bath
(Check) Floor X Walls X Ceiling X Doors/Windows X Sinks X Trash X Drawers X
Outdoors Entrance X Exit X Other VEHICLE

5) PHYSICAL EVIDENCE: (listed on back) COLLECT STANDARDS!!
Latent Exams X UV Light X Casting Vacuum Blood Test
Gunshot Residue Test TMDT Other semen stains

6) CRIME SCENE SECURED: Date: 3/30/87 Time: 19:30 Sealed: tape and officer posted

7) MORGUE: ME# 87-0208 Fingerprints: W. Donohue Photographs: T. Borowicz
Identifying Marks/Items:
Wounds: Bruise to rt. temple-strangulation
Other Exams:
Evidence Received: (see M.E.'s Property From)
From: Dr. E. Mitchell To: ET Borowicz/Lab Date/Time 30 Mar 87 2030

8) CID/CIS: Conference with: Capt. O'Donnell Date/Time 30 Mar 87 1350

9) SUSPECT: Hector Rivas Address: Cazenovia D.O.B.
Suspect Samples: (Recovered By/Location/Date/Time)
a) Photographs
b) Finger/Palm Prints
c) Clothing with shoes
d) Blood & Urine Specimens Dr. Wasserman/CID? 31 March 87
e) Fingernail Scrapings
f) Hair Standards
g) Gunshot Residue/TMDT

001714

Reporting Investigator: Approving Superior:

about when she may have died with respect to when her body was found?

A As I recall, he said that she died at least two days before her body was found.

Q Now, was the fact that Hector Rivas had a potential alibi for some of the days prior to when her body was found a factor in determining that he couldn't be prosecuted successfully for that murder?

A No. Not in -- not in my opinion. No.

Q Now, at any point -- withdrawn.

So, after you were recruited to the district attorney's office by DA Fitzpatrick, were you instructed to look through cold cases to try to get convictions?

A Yes. We -- we discussed cold cases. Yes, sir.

Q I'm asking a slightly different question. Did DA Fitzpatrick ask you to go look at some cold cases to see if they could possibly be prosecuted?

A Well, he didn't have to tell me to look. I'm the one that worked on the cold cases, so yes. I was very aware of them.

Q Okay, I guess, then, I should reframe my question. When you say you worked on cold cases, was that a particular assignment that you were provided at the district attorney's office?

EXH-35
Dec 20 2023

01.27.2022 14:06

RE: DR. MITCHELL

#1 Blood Sample
not located

#2 BODY HAS
DECOMP, INCLUDING
BRAIN (SWISS CHEESE).

PUSHES TOD
LIMITS FURTHER
OUT. (GOOD!!!)

Pete

87-37611

# VOLUNTARY AFFIDAVIT

STATE OF NEW YORK)
COUNTY OF ~~ONONDAGA)SS:~~ MADISON) SS:
CITY OF SYRACUSE)

APPLICATION OF Search Warrant
************************************************************************

In the matter of

The application of Investigator Timothy -H Phinney, of the Syracuse Polcie Department, for a warrant authorizing the search of the premis located at, 4028 Nelson Hgts Rd., Nelson,New York, also known as the residence of Hector M Rivas, Town of Cazenovia Nelson County of Madison, and all appurtentent areas, thereof, including out buildings and property., Also for the search of two motor vehicles registered to Hector M Rivas, being a Red 1986, Chevrolet Van New York Regisrtation number AC 9554, and a 1983 Oldsmobil 2dsd Grey, New York Registration 1-Rivas. The premis located at 4028 Nelson Hgts Rd., Nelson New York, is a one family ranch type residence with shake shingle siding.

***************************** *****************************************
*
STATE OF NEW YORK) **
COUNTY OF ONONDAGA)SS:
CITY OF SYRACUSE

I timothy H Phinney, being duly sworn, deposes and says;

I am a police officer and applicant herein , employed by the Syracuse Police Department, and have been so employed for thirteen years.

There is probable cause to believe that certain property, herein after described, may be found at the premises and vehicles described herin.

A one family ranch type house with shake shingled siding, also known as 4028 Nelson Rd., Nelson New York, Madison County, also known as the residence of Hector M Rivas. Also two motor vehicles registered to Hector M Rivas, being a 1986 Chevrolet Red Van, New York Registration AC 9554, and a 1983 Grey Oldsmobil 2dsd, New York Registration number 1-Rivas. Any appurtenant areas outbuildings and property.
The property to be siezed as evidence being a key to the door at 248 Hickock Ave., and any clothing found on the premis including Bloody clothing, and a gray sweater and grey slacks,. Possibley Also Soiled with Fecal material

That on the 30th of March 1987, at 1308 hrs., the Syracuse Police were informed, of and began an investigation on the death of Valerie Hill residing at 248 Hickock Ave., which has been classified as a Homicide. Subsequant Investigat by this Investigator and other member of the Syracuse Police Department, have led this Department to believe that the above evidence may be secreted, at the above location or in the above listed Vehicles.

Affidavits have been secured and are attached hereto and made part of this application from Marianne Murphy, who resides at 244 Hickock Ave, who observed Hector Rivas at the victim's residence and enter the residence at 248 Hickock Ave, the victim, Valeri Hill not being at home at that time. He was wearing a grey sweater, and grey slacks at that time. the 28th of March 8 At about 2:30 PM.

I have read this statement (had this statement read to me) which consists of 2 page(s) and the facts contained therein are true and correct to the best of my knowledge.

NOTE: FALSE STATEMENTS MADE HEREIN ARE PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT TO SECTION 210.45 OF THE PENAL LAW OF THE STATE OF NEW YORK.

AFFIRMED UNDER PENALTY OF PERJURY, this 30th day of March, 1987

Signature Timothy H Phinney

Witness: ______ page 1 of 2 pages

SUBSCRIBED AND SWORN TO BEFORE ME

THIS 30th DAY OF March, 1987.

[signature] ~~NOTARY PUBLIC/COMMISSIONER OF DEEDS~~
County Court Judge

87-37611

# VOLUNTARY AFFIDAVIT

STATE OF NEW YORK)
COUNTY OF ONONDAGA) SS:
CITY OF SYRACUSE)

Continued affidavit of Inv Timothy H Phinney page two.....

The affidavitobtained from Ms Kathy Colucci, the resident of 242 Hickock Ave. who observed Hector M Rivas, and Valeri Hill conversing during the week of the 22nd of March on Monday or tuesday. Ms. Colucci, also knows and states in her affidavit that Hector drives a red van and an grey vehicle plate # J- Rivas.

The affidavit obtained fromMr. David Hill the brother of the victim, Valerie Hill, had had conversations with Valerie Hill regarding her relationship with Hector Rivas, being that they were no longer seeing one another and that Hector, was attempting to get back together with Valerie Hill.

The affidavit of Randall Hill the father of the Victim Valeri Hill, Who had told him on the 27th of March 1987, that she had observed Hector M Rivas driving around her house, and the latest sighting of Hector Rivas was as she was leaving her home to meet with her father that evening. She further stated to Mr. Hill that Hector Rivas had been attempting to see her again and that she did not want to.

The affidavit of David Hill further states that Valerie Hill had told him that Hector Rivas still had a key to her apartment and had been letting himself into the apartment while she has not been there.

Also attached hereto and made part of this application is an affidavit of Investigator James Driscoll Of the Syracuse Police Department, after his interview with Hector M Rivas. Inv Driscoll states that Rivas denies being in or near the victim's Residence located at 248 Hickock Ave. on the 28th of March 1987, at any part of the day or night.

That the Onondaga County Medical Examiners office, Dr. Mitchell's preliminary estimate on the time of Death of the Victim, ValerixM Hill was sometime saturday the 28th of March afternoon, and sunday morning the 29th of March 19 That also penetration of the victim's anus was made by some foriegn object as yet unidetified, and that fecal material was found on the victim's legs. Also the victim had no other visible injuries, other than probable caus of death as being strangulation.

Wherefore, based upon the above investigation I respectfully request the court to issue a warrant and seizure annexed directing a search for and seizure of the property described herein, and that if any evidence, or any part thereof be found, it be brought before the Court with such and further relief that the court deem proper.

That no other application in this matter has been brought before this or any other Court, nor any Judge, Justice, or Magistrate.

I have read this statement (had this statement read to me) which consists of 2 page(s) and the facts contained therein are true and correct to the best of my knowledge.

NOTE: FALSE STATEMENTS MADE HEREIN ARE PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT TO SECTION 210.45 OF THE PENAL LAW OF THE STATE OF NEW YORK.

AFFIRMED UNDER PENALTY OF PERJURY, this 30 day of March, 1987

Signature: Timothy H Phinney

Witness: ______ page 2 of 2 pages

SUBSCRIBED AND SWORN TO BEFORE ME

THIS 30th DAY OF March 1987

______ NOTARY PUBLIC/COMMISSIONER OF DEEDS
County Court Judge

P010157