UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

FLOR RIVAS, Executor of the Estate of Hector Rivas, also known as FLORA RIVAS, formerly known as SIDNEY MANES, Administrator of the Estate of Hector Rivas,

Plaintiff,

-against-

ONONDAGA COUNTY and DR. ERIK MITCHELL,

Defendants.

**DEFENDANT MITCHELL'S SUPPLEMENTAL TRIAL BRIEF**

**Civil Action No. 5:19-cv-844 (BKS/CBF)**

**Hon. Brenda K. Sannes, Chief United States District Judge**

## I. DEFENDANT MITCHELL IS ENTITLED TO QUALIFIED IMMUNITY

Dr. Spitz has testified he did not opine Mitchell deviated from the standard of care in his performance of the autopsy.

He opined that Mitchell in his trial testimony did not correctly apply the science associated with rigor, incorrectly applying outlier data that is on a bell shaped curve but on the outer limits. He opines that Mitchell gave too much weight to circumstantial evidence. All of this is based on Mitchell's Courtroom testimony.

Nowhere in the autopsy report, medical examiner's records or elsewhere did Mitchell opine that the likely day of death was Friday March 27, 1987. Consequently, Mitchell's records and actions on March 30, 1987 up to the time of trial are within his duties as medical examiner.

Mitchell did not violate a clearly established right of Rivas at the time of his autopsy and when he opined that Valerie Hill's body had been there for 2 to 3 days. It could not have been a fabricated opinion designed to deprive Rivas of his rights. Mitchell was unaware of Rivas, unaware of his alibi status. In fact, Rivas was being questioned contemporaneous with the medical record being prepared on March 30, 1987 and there is no evidence in this case Mitchell

was aware of Rivas or his alibi on March 30, 1987. (See *Anderson v. Creighton* 483 US 635 1987) As indicated by Mitchell and Dr. Jumbelic, a reasonable medical examiner given the autopsy and the fact that the decedent was last seen alive on Friday, March 27, 1987, would have concluded that window of death to be 2 to 3 days as set forth by Dr. Mitchell. He is entitled to qualified immunity based on that conclusion and the lack of any evidence that such a conclusion could be deemed to be fabricated to violate Rivas' rights.

## II. II. DEFENDANT MITCHELL IS UNAWARE OF THE PRECISE FABRICATION CLAIMS

Even as this case is several weeks from trial, Plaintiff has not articulated exactly what the claim of fabrication is against Dr. Mitchell. As noted in our prior trial memorandum, Dr. Mitchell was engaged in the ordinary business of functioning as a medical examiner on March 30, 1987 when he did the following:

1. Examined Valerie Hill's body.
2. Examined the apartment of Valerie Hill.
3. Found it to be 62 degrees, relatively cool.
4. Performed the autopsy on that date.
5. Learned that the last person to see her alive was her father on Friday evening, March 27th, an important historical and evidentiary marker used by medical examiners to determine the window or range of death.
6. Opined in the medical examiner's record that it appeared Valerie Hill's body had been in the apartment on the apartment floor for 2-3 days.
7. Did not give an exact time of death in either the medical examiner's records, autopsy report or death certificate.

Once Mitchell completed his autopsy, Kodachrome photographic slides of Valerie Hill's brain were taken and Mitchell opined that her brain was mildly softened secondary to autolytic changes. On internal examination, he wrote in the autopsy report:

> "The 1.530 gram brain is mildly softened secondary to autolytic changes. There is no evidence of acute contusion injury. There is an estimated milliliter of liquid subdural and subarachnoid blood over the lateral convexities close to the midline."

In his deposition years later, he detailed that he observed slumping and change at the brain which were described as the autolytic changes. He testified that those changes while not diagnostic of the body having been deceased for an extended period of time, the changes were supportive. He testified at page 47 of his deposition that when he removed the brain and observed it, that it was beginning to soften, not maintain the same structural integrity that it would if it were fresh. He explained that that was what was meant by autolytic change. Mitchell clearly testified in his deposition that this was a piece of information that contributed to his opinion as to the window of death but not a definitive free standing pathognomonic finding.

> That is consistent with it. I mean, those slides are not in themselves the definition of decomposition. But I described in my autopsy report softening and autolytic change on gross exam, and what you've got here is a brain that is slumping slightly down in the brain cage and has slight flattening of the gyral definition. But handed this independently with no history, you're not going to derive - - it goes along with what I observed but It's not pathognomonic of it. (Mitchell depo pg. 84)

There is no admissible evidence after this autopsy and the preparation of the report and records associated with it that Mitchell in any way offered a further opinion as to the window of death or that Friday was the more likely day of death until he testified first before the Grand Jury and then at trial, both events cloaked in absolute immunity.

Plaintiff's counsel referenced in the court conference that Mitchell did not take body temperature of the decedent. Plaintiff's expert, Dr. Daniel Spitz, was not critical of Mitchell not

taking body temperature. He in fact testified that he did not believe Mitchell fell below the standard of care in performing the autopsy or his investigation of her death. He took issue with Mitchell's opinion that Hill's death occurred beyond 48 hours before she was found. He asserts that Mitchell determining that window of death fell below the standard of care. He does not assert in his report or deposition that Mitchell was reckless or fabricated evidence. The only time Mitchell offered the opinion that the more likely time of death was on Friday was at trial. Prior to that, he opined only that the window of death was 2-3 days in the medical examiner's record on March 30, 1987. And the more likely opinion that Friday was the day of death was in response to a hypothetical question posed at trial and qualified by Mitchell to be on the outer edge of possibility. Tynan recalls and testified that Mitchell, on the day the body was found, told him that she had been there more than two days. The window of death opinion was offered in the autopsy record and the various other records surrounding it on March 30, 1987. That remained Mitchell's opinion throughout trial when his testimony was covered by absolute immunity. Whether correct or incorrect, there was no fabrication or recklessness.

## III. PLAINTIFF'S ATTEMPTS TO ASSASSINATE MITCHELL'S CHARACTER SHOULD BE REJECTED BY THIS COURT.

In the context of the court potentially permitting Mitchell's testimony at the criminal trial for which he is entitled to immunity to be read to the jury with the limiting instruction that the County proposes at page 12 of Document 281, Mitchell is placed in an extraordinarily fragile circumstance in a case where he has personal liability, including potential punitive damages. If Mitchell is indeed entitled to immunity and if his testimony is read to the jury with the court's limiting instruction, may he then defend his testimony by explaining his opinions without in some way adversely impacting his immunity? FRE Rules 608B, 609 and 403 are existent to

protect against mere allegations regarding wrongdoing and to prevent extrinsic evidence such as the huge number of newspaper articles and other propounded documents that are subsequent to the Rivas conviction and before this court for consideration. Likewise, Sawyer and Rigle offer nothing with regard to the specifics of Mitchell's testimony in the Rivas case. At a minimum, an offer of proof should be provided by plaintiff's proposed witnesses before the jury is subjected to their testimony. The professional allegations that are being put forward are an attempt to create trial by insinuation which is covered by the County in its brief citing 1 McCormick on Evidence, para. 39, N. 6, (9th Ed.), and the County is correct that trial by insinuation runs afoul of Rule 403. Mitchell was investigated and not charged with misconduct.

Mitchell was referred to the New York State Office of Professional Ethics in 1993 before the Rivas trial and in 1995 it was determined that there was not sufficient evidence to bring charges against him. In fact, Mitchell has never been charged or disciplined by any of the professional organizations or State licensing entities in any of the many states where he has worked. At best, this case is about a disagreement between Mitchell and Spitz but not about any professional misconduct or fabrication.

Like any physician or other professional who has had a long career, he has had other professionals disagree with certain of his opinions from time to time. That is, however, collateral and irrelevant and that he has had those disagreements in his career is not probative or admissible in this case. Indeed, that is what exists with Dr. Spitz – a disagreement. Dr. Spitz has not accused Mitchell of being reckless or fabricating evidence in his report. He accuses Mitchell of using outlier data in forming his opinions at trial. He admits the date of death opinion of Mitchell is on the bell-shaped curve, but resists moving the opinion toward the middle by ignoring when the decedent was last seen or heard from, evidence at trial he failed to read before

offering his opinions. Those opinions are not reckless or fabrication – and Dr. Spitz reached his conclusions ignoring the fact that Valerie Hill was last seen alive or heard from on Friday, March 27, 1987. In fact, Dr. Spitz reached his opinion only having read Mitchell's trial testimony, ignoring the many facts and fact witnesses supporting the probability of Hill's death on March 27.

If the court permits Mitchell's testimony to be read to the jury at the criminal trial, even with the court's charge attempting to mitigate the permeation of his immunity and allows the subsequent character assassination to occur, Mitchell's fate will likely be sealed.

The court did observe that as pertains to Brady, the State investigation that commenced just prior to the criminal trial was salient. It is noteworthy that Mitchell was not found to have engaged in professional misconduct with regard to that investigation by the New York State Health Department, and there is no proof the State investigation was referred to Fitzpatrick prior to the criminal trial.

## IV. OBJECTIONS TO CERTAIN OF PLAINTIFF'S PROPOSED EXHIBITS.

As set forth below, plaintiffs have proposed a number of exhibits that postdate the Rivas verdict which we assert are not relevant for that reason alone.

Plaintiffs attempt to introduce into evidence a variety of documents that were considered by the New York State Health Department as it pertains to complaints about Dr. Mitchell that prompted the commencement of an investigation in March 1993 just before the commencement of the Rivas trial. What is omitted is the fact that Dr. Mitchell was never charged by the New York State Health Department and in fact received a closure letter from Pauline Frasier of the New York State Health Department dated 12/21/94. The letter stated: "The allegations and other information

have been reviewed by our office. There was insufficient evidence to sustain a charge of professional misconduct consequently, our investigation has been discontinued and the case is closed." An internal memo associated with this letter indicated that it would be going out and that it would be made public given the intense level of scrutiny that had been received by the various charges made. The Health Department considered the charges proffered by Drs. Rigle, Sawyer and Germaniuk. The official conclusion not to charge Mitchell came after an intense investigation. As a consequence, the court should not allow the allegations that were ultimately determined to be insufficient to bring charges to be brought before this court for the purpose of either impeaching Dr. Mitchell or somehow supporting violation of Brady or Giglio. The prejudice to Dr. Mitchell is immense, and there is no likelihood that Calle or Fitzpatrick would have been able to obtain this information.

The premise of Plaintiff appears to be that the State Health Department investigation is fair game because it should have been presented by Mr. Fitzpatrick to Mr. Calle, who will not be a witness in the case. His file is unavailable and has never been produced. The premise is that Mitchell and his office somehow could have impacted the outcome of the Rivas trial. Sidney Manes was questioned in his deposition as to whether he in his long representation of Rivas he ever obtained Calle's file. He did not ask for it or obtain it and apparently not one of Rivas' lawyers obtained his file.

The practical reality is that the New York State Health Department investigation commenced on or about March 3, 1993. At that point, none of the information being collected by the Health Department was available to either Dr. Mitchell or Mr. Fitzpatrick, or as a matter of law would it have been available. We respectfully direct the court to Document 79 which was filed by the New York State Department of Health counsel's office in response to plaintiff's request for

records dated February 10, 2022. In that document, Todd Sardella, Senior Attorney in the Bureau of Litigation Division of Legal Affairs of the New York State Health Department, advised:

> "Pursuant to New York State Public Health Law, records regarding investigations and findings in professional medical misconduct disciplinary matters are confidential and not subject to release. Specifically, Section 230(10)(a)(v) provides that: "[v] Files of the Office of Professional Conduct relating to the investigation of possible instances of professional misconduct shall be confidential and not subject to disclosure at the request of any person, except as provided by law in a pending disciplinary proceeding."

Mr. Sardella points out the only exceptions to this provision are: 1) Permitting the OPMC to share information to others in the department concerning investigations within the department; 2) Pursuant to a subpoena from "other duly authorized public agencies responsible for professional regulation or criminal prosecution"; or 3) By the Commissioner to "avert or minimize a public health threat." PHL Section 230(11)(a) also provides that a complaint (or "report") to the Board of Professional Medical Conduct ("BPMC"), shall remain confidential and shall not be admitted into evidence in any administrative or judicial proceeding except that the [BPMC] may begin investigations on the basis of such reports and may use them to develop further information." Accordingly, the records sought by the proposed non-party subpoena are unequivocally statutorily confidential and protected from disclosure by New York State Law. The memo then quotes *King v. Comde*, 121 F.R.D. 180 (E.D.N.Y. 1988) in which the District Court Judge Weinstein discussed balancing tests when applying State privilege in a federal case should attach. I am attaching for the Court's convenience the entire letter. The notion in this case that a nascent investigation by the State would permit piecemeal complaints available in March to be presented for a criminal trial defies logic, reason and fairness.

Indeed, the ultimate determination in the case of Dr. Mitchell's alleged professional misconduct was that there was not sufficient evidence to charge him notwithstanding the flurry of

charges and countercharges associated therewith. If made aware of this investigation by Mr. Fitzpatrick by normal due diligence Calle failed to engage in – and Mr. Calle should have been and may have been aware of the investigation – we conveniently do not have his file – Mr. Calle likely could not have obtained any of the records from the State Health Department. All he could have achieved with knowledge of the investigation was to ask Mitchell if he was being investigated, which would have prompted Mitchell to report what he said in the newspaper. Hardly a devastating moment. Indeed, Fitzpatrick saw Calle with newspapers at trial, but they were not used to cross Mitchell on this issue. Calle did cross Mitchell on a March 31, 1987 newspaper article quoting the search warrant demonstrating Calle was capable of obtaining publicly available information about the case.(Trial Transcript pg. 895)

We further request that correspondence from the Health Department to Dr. Mitchell and to the complainants, presumably including Dr. Rigle and Dr. Sawyer, indicating that charges were not being brought against Dr. Mitchell not be received into evidence. If the New York State Health Department records are received into evidence or if Dr. Mitchell is to be questioned about the investigation, it is irrelevant and has nothing to do with Mitchell's alleged fabrication of evidence in Rivas.

## V. MITCHELL'S INVOLVEMENT IN POST-RIVAS LAWSUITS ARE NOT RELEVANT.

Likewise, plaintiff has presented a deposition of Dr. Mitchell in a Kansas case entitled Buckhorn. As we approach trial, we advise the court prophylactically if indeed this deposition is to be used for any purpose, we oppose it. The prejudice of this deposition does not outweigh the benefit. The fact that Dr. Mitchell is a defendant in the case is irrelevant and should not be used to impeach him.

## VI. CHARACTER ASSASSINATION EVIDENCE IS IRRELEVANT.

In summary, the court is being asked to allow a trial of character assassination against Dr. Erik Mitchell who has never been charged with professional misconduct and after an investigation, there was a determination that there was inadequate evidence to pursue the charge of professional misconduct by the New York State Department of Health, all in the name of the requirement that there be disclosure by virtue of Brady or Giglio. None of the charges brought to the State are relevant to Rivas. That the County Legislature and the County Executive exercised ordinary oversight functions and studied the alleged mismanagement of his office is irrelevant. Mitchell's conduct in Rivas was not the subject of any complaint or investigation. The prejudice to Dr. Mitchell is immense coupled with the prospect that his absolute testimonial immunity will be eroded by permitting the reading of his testimony at the criminal trial to inferentially prove his opinions as to the window of death were reckless and/or fabrication. The information that is being requested to be presented to the Court is information that would not have been available at the time of trial and constitutes certain allegations which it turns out were not sufficient to charge Dr. Mitchell with professional misconduct.

## VII. POST VERDICT NEWSPAPER ARTICLES ARE NOT RELEVANT.

The tremendous number of newspaper articles subsequent to the Rivas trial are the best evidence of plaintiffs attempt to sufficiently discredit Dr. Mitchell's good name and reputation with subsequent allegations that are not relevant to his opinion and to his conduct in the Rivas case. They have no case against him. He did not fabricate evidence to placate Fitzpatrick when on March

30, 1987 he initially opined the window of death was 2-3 days. Fitzpatrick was not employed by the DA's office on that date and was not the District Attorney.

## VIII. RIGLE AND SAWYER ARE NOT RELEVANT WITNESSES.

It is also noteworthy to repeat that neither Dr. Rigle nor Dr. Sawyer ever once mentioned in their criticism of Dr. Mitchell the Rivas case as an example of Dr. Mitchell's misconduct. Given the detail and venom that they exhibited, it is salient that the same was not referenced and consequently further supportive of the lack of relevance of the Rigle and Sawyer claims to this case buttressed by the rejection of their charges and determination not to charge Mitchell.

## IX. PRE-RIVAS INVESTIGATION BY COUNTY DID NOT RESULT IN CHARGES.

It is noteworthy that prior to the Rivas trial, the prior investigation by the County with regard to Mitchell resulted in no charges being brought against him and findings consistent with exoneration.

Dated: November 12, 2026

Respectfully submitted,

ROBERT F. JULIAN, P.C.

____________________________
Robert F. Julian, Esq.
*Attorneys for Defendant Erik Mitchell*
2037 Genesee Street
Utica, New York 13501
Ph: (315) 797-5610
Robert@rfjulian.com